695 So.2d 557 (1997)
Delores BAILEY, Wife of John Warren Bailey, Individually, as Personal Representative of Decedent, John Warren Bailey, and as Natural Tutrix of Their Minor Son, John Warren Bailey, Jr., and Curtis M. Bailey and Michael L. Bailey
v.
STATE of Louisiana, Through The DEPARTMENT OF HEALTH AND HUMAN RESOURCES, et al.
No. 96-CA-2797.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
*558 Joseph B. Landry, Guste, Barnett & Shushan, New Orleans, for Plaintiffs/Appellants.
Richard Ieyoub, Attorney General, Miles Trapolin, Trapolin Law Firm, New Orleans, for Defendants/Appellees.
Before SCHOTT, C.J., and CIACCIO and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiffs Dorothy Bailey and her children (hereinafter referred to collectively as "the Baileys"), survivors of decedent John Warren Bailey, appeal a trial court judgment dismissing their cause of action for medical malpractice against defendant State of Louisiana. Finding that the trial court's decision was not manifestly erroneous, we affirm.

I. Facts

Although the named defendant in the instant case is the State of Louisiana, all of the Baileys' allegations concern acts of medical malpractice committed by Charity Hospital/Medical Center of Louisiana at New Orleans (hereinafter referred to as "Charity") or St. Bernard Mental Health Clinic (hereinafter referred to as "SBMHC"). In order to hold the State liable for the Baileys' injuries, we must find that one or more state agencies or employees of state agencies committed specific acts of medical malpractice which resulted in the Baileys' injuries. Accordingly, this opinion addresses the allegations against Charity and SBMHC, as well as the allegations against treating physician Dr. Murray Diamond, separately.
Specifically, the Baileys claim that Charity Hospital and SBMHC are liable for damages they incurred as a result of the death of decedent Mr. Bailey. Mr. Bailey, who had been diagnosed as having a bipolar maniac/ depressive psychiatric condition, died on January 26, 1982, as a result of fatal burns. Mr. Bailey suffered those burns when 50 cents worth of gasoline he had purchased at the Billups Station in Chalmette, La., where the Baileys live, ignited. The record indicates that Mr. Bailey had been carrying the gasoline in a plastic container and was perhaps trying to build a fire, when he became engulfed in flames on the levee behind the station. Mr. Bailey's death certificate indicates that the cause of death was "third degree burns of 90% of the body surface"; the death was classified as an accident.[1] The Baileys allege, however, that Mr. Bailey's death was directly caused by the failures of Charity, SBMHC, and Dr. Diamond to properly treat his mental illness, especially as it regards regulation of his lithium medication; lithium was the drug used to treat Mr. Bailey's mental illness.[2]
*559 Mr. Bailey had suffered from progressive mental illness since 1975 and was treated on numerous occasions at both Charity and SBMHC; he had also been hospitalized at Southeast Louisiana Hospital (hereinafter referred to as "Southeast"). Initially, Mr. Bailey's disease had been diagnosed as schizophrenia, and he was being treated with drugs other than lithium. However, the diagnosis was changed at some time prior to his death. When Mr. Bailey was released from his last hospitalization at Southeast on April 30,1981, he was taking lithium. In fact, the level of lithium in his blood on the day of his release was 0.81, well within the "therapeutic range" of 0.6 to 1.2 recommended by the 1981 and 1982 Physician's Desk Reference (PDR). However, Mr. Bailey's release papers noted that Mr. Bailey's prognosis was only "fair" because "patient tends to get off medication and discontinues followup visits at the mental health center." At the time of his release, Mr. Bailey was given a prescription for lithium and referred to SBMHC, where he had been treated by Dr. Murray Diamond[3] intermittently since the inception of his mental illness.
Because SBMHC had no laboratory facilities for testing lithium blood levels, Mr. Bailey's blood tests were done at Charity. When the lab work was completed, Charity mailed the results of the blood test to SBMHC. The record shows that monthly appointments with Dr. Diamond were scheduled for Mr. Bailey from the time of his release from Southeast until the time of his death. However, Mr. Bailey was a "noshow" for several of those appointments. When Mr. Bailey failed to show, SBMHC mailed him a notice of his next appointment. Mr. Bailey attended group therapy sessions during that period.
Mr. Bailey's blood lithium levels were tested three times between April 30, 1981 and January 26, 1982. Those blood tests showed that Mr. Bailey's lithium level was not being maintained at the therapeutic level and that in fact it was progressively falling. Specifically, his lithium level tested at 0.47 on September 15,1981; at 0.33 on December 30, 1981; and at 0.18 on January 18, 1982, just eight days prior to his death. Mr. Bailey had a scheduled appointment to see Dr. Diamond the day after his death, January 27, 1982.
In filing suit against the State of Louisiana, the Baileys claimed that both Charity and SBMHC were negligent in treating Mr. Bailey in the following ways: (1) failing to monitor his lithium levels more regularly, (2) failing to maintain his lithium levels in a therapeutic range, (3) failing to notify the family when his lithium levels were below the therapeutic range, and (4) failing to have Mr. Bailey committed to a hospital.

II. Applicable law

In order to recover damages in a medical malpractice case, the plaintiff must establish the following elements through expert medical testimony: (1) the standard of care applicable to the defendant health-care provider; (2) breach of the standard of care by the defendant health-care provider; (3) cause-in-fact between the breach and the damages suffered; and (4) actual damages. LSAR.S. 40:1299.39 Resolution of these inquiries constitute factual conclusions, which may not be reversed on appeal absent manifest error. Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1276 (La.1991). Thus, this court may reverse the trial court's factual findings only if it makes the following findings: (1) the record reflects no reasonable factual basis for the trial court's finding, and (2) the record establishes that the finding is clearly wrong. Baumeister v. Plunkett, 95-2270, p. 7 (La.5/21/96), 673 So.2d 994, 998.

III. Charity Hospital

In dismissing the Baileys' suit against Charity, the trial court found that the Baileys failed to carry their burden of proving the first element of a cause of action in medical malpracticethe standard of care applicable *560 to a hospital performing blood work. The trial court also found that the Baileys failed to prove any duty on Charity's part to notify Mr. Bailey's family of the results of his blood tests. Moreover, our reading of the record indicates that the Baileys failed to prove that Charity had any duty to perform any of the other tasks they claim Charity failed to do, i.e., test his lithium levels more regularly, maintain his lithium levels in a therapeutic range, or have Mr. Bailey committed to a hospital.
We agree with the trial court's finding on these issues. The Baileys did not call any witnesses, fact or expert, to establish the standard of care for hospitals performing lab work. Because the plaintiff failed to establish the standard of care applicable to Charity Hospital, whose only relationship to Mr. Bailey was performing blood work at the request of SBMHC, we affirm the trial court's dismissal of the Baileys' suit against Charity.

IV. St. Bernard Medical Health Clinic

A. Standard of care

The trial court found that the Baileys carried their burden of proving the first element of a cause of action in medical malpractice regarding SBMHCthe standard of care applicable to a health-care provider treating a psychiatric patient on lithium. Through the expert testimony of Dr. Walter Oliver Sanders, the Baileys proved that such a health-care provider has a duty to intervene only if the health-care provider, or one of its employees, knew or should have known the following things: (1) that the patient's lithium level is low, and (2) patient's condition has deteriorated to the point that he was acting in a suicidal, homicidal, or gravely disabled manner. If the health-care provider is aware of those two things, it has a duty to either notify the patient's family of the problem, or seek hospitalization of the patient. The defendants' expert, Dr. Gene Houston, agreed with that standard of care. Thus, we find a reasonable factual basis for the trial court's ruling that the Baileys proved the standard of care applicable to SBMHC.

B. Breach of standard of care

However, in dismissing SBMHC, the trial court found that the Baileys failed to carry their burden of proving the second element of a cause of action in medical malpracticea breach of the applicable duty on the part of SBMHC. We agree with that conclusion.

1. Knowledge that Mr. Bailey's blood lithium levels were low

The first allegation made by the Baileys concerning SBMHC's breach of the standard of carethat SBMHC failed to test Mr. Bailey's lithium level more regularlyis pertinent to the first inquiry: whether SBMHC (or its employee, Dr. Diamond) knew or should have known that Mr. Bailey's lithium levels were low. Dr. Sanders testified that, according to the 1981 PDR, lithium levels should be tested twice a week until the level is stabilized, then every two months in order to maintain the level. Even Dr. Houston, the defendant's expert, said Mr. Bailey's lithium levels should have been tested more regularly than they were. According to the record, Mr. Bailey's lithium blood levels were tested every time Dr. Diamond ordered a test. However, Dr. Diamond apparently ordered only three tests in the nine-month period between Mr. Bailey's release from Southeast and his death. The intervals between the tests were much longer than the twice-a-week standard recommended by the PDR for a patient whose levels had not been "stabilized." In fact, almost five months passed between Mr. Bailey's release from the hospital and the first test, while three and one-half months passed between the second and third test. However, the record indicates that Mr. Bailey failed to appear at SBMHC for many of his appointments; had Mr. Bailey showed up more often, more tests might have been conducted.[4] Nevertheless, *561 we find merit in the Baileys' allegations that Dr. Diamond failed to test Mr. Bailey's blood levels as recommended by the PDR.[5]
However, that fact in itself is not sufficient to prove that SBMHC or its employee, Dr. Diamond, breached the standard of care applicable to a healthcare provider treating a psychiatric patient on lithium. The fact that SBMHC or Dr. Diamond failed to test Mr. Bailey's lithium levels as recommended by the PDR goes to whether SBMHC or Dr. Diamond should have known that Mr. Bailey's lithium blood level was low. However, the record proves that SBMHC and Dr. Diamond not only should have known that Mr. Bailey's lithium levels were lower than the therapeutic levels required by the PDR, they in fact did know about his low blood lithium level. Moreover, despite the fact that tests were not ordered more regularly, SBMHC and Dr. Diamond were aware that Mr. Bailey's blood lithium levels were progressively getting even lower. In fact, SBMHC had scheduled an appointment with Mr. Bailey on January 27, 1982, the day after the accident.

2. Knowledge that Mr. Bailey was acting in a suicidal, homicidal, or gravely disabled manner

Nevertheless, the evidence presented by the Baileys was insufficient to carry their burden of proving that SBMHC through Dr. Diamond violated the standard of care imposed on health-care providers treating psychiatric patients on lithium. As stated above, the Baileys were required to prove both that SBMHC and/or Dr. Diamond knew that the lithium levels were lowwhich they did and that SBMHC knew that Mr. Bailey was acting in a suicidal, homicidal, or gravely disabled manner as a result of the low lithium level; only then would SBMHC have had a duty to either notify the family or take steps to commit Mr. Bailey to a hospital. Because there is no evidence in the record that SBMHC or Dr. Diamond knew that Mr. Bailey was suicidal, homicidal, or gravely disabled, we find a reasonable factual basis for the trial court's finding that the Baileys failed to carry their burden of proving that SBMHC breached the standard of care in treating Mr. Bailey.
In an effort to prove that Dr. Diamond knew that Mr. Bailey was suicidal, homicidal, or gravely disabled, Ms. Bailey testified that she told Dr. Diamond that Mr. Bailey's behavior was "bizarre" on several occasions; however, she admitted that she never called the clinic about any abnormal actions by her husband in the two months immediately prior to his death. Moreover, the record indicates that Mr. Bailey had regularly acted in a "bizarre" manner for years prior to his death. The Baileys failed to show that Mr. Bailey's behavior was any more unusual just prior to his death than it had been on many occasions since his illness began. In fact, Mrs. Bailey testified that both her father and Mr. Bailey's uncle saw Mr. Bailey just hours prior to his death, and that she personally talked to him on the phone, without detecting anything more unusual than normal about his behavior. Proof that Dr. Diamond was aware that Mr. Bailey's lithium level was low, in the absence of proof of suicidal, homicidal, or gravely disabled behavior, is insufficient to carry the Bailey's burden of proving that Dr. Diamond breached the standard of care by failing to intervene.

C. Causation

Even assuming that SBMHC through Dr. Diamond breached the standard of care in treating Mr. Bailey, the Baileys failed to carry their burden of proving that breach of the standard of care caused their damages. The record evidence as a whole indicates, not only that Dr. Diamond's failure to monitor Mr. Bailey's blood was not causally connected *562 to Mr. Bailey's death, but it was not even the primary reason for Mr. Bailey's low blood lithium levels. The record indicates that the primary reason Mr. Bailey's lithium levels were low was Mr. Bailey's own failure to cooperate in regularly taking his prescribed medication. Ms. Bailey testified that she had to "play games" with Mr. Bailey to get him to take his pill in the mornings before she went to work. Thereafter, she took Mr. Bailey to his mother's house, but was uncertain as to how his mother got him to take the two pills he was supposed to take during the day. Moreover, Michael Bailey testified that his father told him that he often placed the pill under his tongue when his wife thought he had taken it. The evidence indicates that Mr. Bailey did not like the medication and that he did not take it if he could avoid it. Even the discharge summary from Southeast indicated that Mr. Bailey was uncooperative with medication and follow-up visits to the clinic. Finally, Dr. Diamond testified by deposition that he tried on numerous occasions to impress upon Ms. Bailey the necessity that her husband regularly take his medication.
Moreover, Ms. Bailey testified at trial that Mr. Bailey told her that the fire was an accident and that he did not want to die; thus, the Baileys failed to prove that Mr. Bailey's death was a result of suicide, or otherwise directly connected to his low blood lithium levels. Additionally, the record is completely devoid of any evidence to support the Baileys' contention at oral argument in this court that Mr. Bailey's mental condition at the time of his death prevented him from properly appreciating the dangers of gasoline. In addition to the standard of care and breach of the standard of care, a plaintiff in a medical malpractice act must show that the damages incurred are causally related to the health-care provider's breach of the standard of care.

Conclusion
Because the Baileys failed to meet their burden of proof to establish medical malpractice on the part of Charity, SBMHC, or Dr. Diamond in their treatment of Mr. Bailey, the trial court judgment dismissing the Baileys' suit against the State of Louisiana is affirmed.
AFFIRMED.
NOTES
[1] The copy of the death certificate made part of the record in this case indicates that the person filling out the certificate initially marked "suicide," then changed the mark to "accident."
[2] Originally, the Baileys' allegations were based upon allegations that Mr. Bailey committed suicide as a result of his the mistreatment of his mental illness by Charity and SBMHC. However, in this court, they have essentially abandoned that argument, saying instead that the fire was caused by the mistreated mental illness regardless of whether it was intentional or accidental. If the fire was accidental, they say, it was caused by Mr. Bailey's inability because of his mental illness to appreciate the dangers of gasoline. On the other hand, if the fire was an act of suicide, the Baileys say, it was caused directly by his mental illness. The record indicates that Mr. Bailey had previously tried to commit suicide at least once, and perhaps twice, since the inception of his mental illness.
[3] Apparently, at the time of Mr. Bailey's release from Southeast, Dr. Diamond had officially been retired from SBMHC for some period of time. Nevertheless, Dr. Diamond was called to "fill in" at the clinic when the need arose. Dr. Diamond is the only physician who treated Mr. Bailey at SBMHC between his release from Southeast in April of 1981 and his death in January of 1982.
[4] At oral argument, the Baileys made a vague claim concerning this issue related to the State of Louisiana specifically. As previously noted, SBMHC did not have facilities for testing blood, requiring that Mr. Bailey's blood work be done at Charity. The State, because it has a duty to care for indigent psychiatric patients, should have made certain that facilities for performing blood work were available at SBMHC, the Baileys insinuate. Thus, the failure of Dr. Diamond and SBMHC to properly monitor Mr. Bailey's lithium levels is directly attributable to the State they say. A major problem with this argument is that the Baileys failed to establish a standard of care applicable to the State on this issue.
[5] In a related argument, the Baileys also claim that Dr. Diamond breached the standard of care by failing to schedule more frequent return office visits for Mr. Bailey. However, the Baileys did not establish a specific standard of care for scheduled office visits with a psychiatric patient on lithium. Dr. Diamond testified by deposition that an appointment was scheduled for Mr. Bailey once a month. Moreover, as previously noted, Mr. Bailey was often a "no-show" for those appointments. Nothing in the record indicates that Dr. Diamond should have seen Mr. Bailey more often than once a month.