759 So.2d 151 (2000)
Parry MARCHETTA, a minor by his next friend and natural father, Peter J. MARCHETTA
v.
CPC OF LOUISIANA, INC., d/b/a East Lake Hospital and/or Metro Behavioral Health Services.
No. 99-CA-0485.
Court of Appeal of Louisiana, Fourth Circuit.
March 22, 2000.
*152 Gail D. Nicholson, Jean Marie Nicholson, Nicholson & Nicholson, Gulfport, MS and Margaret Alfonso, Gulfport, MS, Counsel for Plaintiff/Appellee.
Robert I. Siegel, Michael B. Alker, Hoffman, Siegel, Seydel, Bienvenu & Centola, New Orleans, LA, Counsel for Defendant/Appellant CPC of LA, Inc., d/b/a East Lake Hospital.
Peter E. Sperling, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY).
PLOTKIN, Judge.
This appeal involves an issue of hospital liability for the alleged excessive inpatient psychiatric treatment of plaintiff Parry Marchetta. Defendant, CPC of Louisiana, Inc., d/b/a East Lake Hospital and/or Metro Behavioral Health Services (hereinafter referred to as "East Lake"), appeals a trial court judgment on a jury verdict in favor of the plaintiffs, Parry and his father, Peter Marchetta (hereinafter referred to collectively as "the Marchettas"). The jury found that East Lake was 50 percent liable[1] for Parry's damages, which were set *153 at $450,000. For the reasons explained below, we reverse.

Facts
Parry was a nine-year-old third grader on January 19, 1994, when he was voluntarily admitted to East Lake for psychiatric care upon the request of his mother, Lois Marchetta, who related to hospital employees a history of homicidal and suicidal behavior. The hospital records indicate that Mrs. Marchetta, who brought Parry to the hospital after hours, stated that she was afraid of her son because he had threatened her with a knife and a hammer, he had set fires, and he had had a gun. Ms. Marchetta, who was separated from Parry's father, had been awarded temporary custody of Parry and his siblings by a Mississippi court; however, she said that she could not "handle" Parry. Ms. Marchetta had been referred to East Lake by Pine Grove Hospital in Mississippi, which was reportedly unable to admit Parry because it did not treat children. When contacted by an East Lake employee by telephone, Dr. Charmaine Semeniuk, director of the Children's Program, approved Parry's admission.
Parry was evaluated during the ensuing days and weeks; he was hospitalized a total of 49 days, until March 8, 1994. During that time, Dr. Semeniuk served as his treating psychiatrist. Parry's father, Peter Marchetta, tried unsuccessfully to secure Parry's release from the second day of his hospitalization, repeatedly telling hospital personnel that Parry did not need psychiatric treatment. Following Parry's release to his mother, Parry went to live with his father, who was eventually granted custody. Mr. Marchetta filed the instant medical malpractice suit on behalf of Parry, naming both Dr. Semeniuk and East Lake, claiming that the hospital should have released Parry much sooner than it did. Following a four-day trial, a jury awarded the Marchettas $50,000 in medical expenses and $400,000 in general damages. The jury assessed liability 50 percent to Dr. Semeniuk and 50 percent to East Lake. Both Dr. Semeniuk and East Lake filed appeals; however, Dr. Semeniuk settled prior to the hearing of this appeal. Thus, the only issue to be decided in this opinion is whether the trial court properly found East Lake liable for Parry's alleged damages.[2]

Standard of Review
At trial, the Marchettas attempted to prove two different theories of liability against East Lake: (1) independent liability, and (2) vicarious liability for the negligence of Dr. Semeniuk. In the instructions the trial court gave to the jury prior to its deliberations, the jury was charged concerning both areas of law. The trial court stated, in pertinent part, as follows:
A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances particularly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes a particular patient depends upon the circumstances and facts of the case.
* * * * *
An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other, nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.

*154 If you find that Doctor Semeniuk was an independent contractor of CPC-East Lake Hospital, then you cannot hold CPC-East Lake Hospital responsible for actions and decisions made by Doctor Semeniuk during her treatment of plaintiff, Parry Marchetta. If, on the other hand, you find that Doctor Semeniuk was not an independent contractor, but rather an employee of CPC-East Lake Hospital, then you can hold CPC-East Lake responsible for actions and decisions made by Doctor Semeniuk during her treatment of plaintiff, Parry Marchetta.
However, despite the fact the trial court charged the jury concerning both independent liability and vicarious liability, the special jury interrogatories did not question the jury concerning Dr. Semeniuk's vicarious liability or employee status. The only interrogatories related to East Lake read as follows:
Interrogatory No. 4: Do you find that the defendant, CPC-East Lake Hospital, breached the standard of care of psychiatric hospitals in its treatment of plaintiff, Parry Marchetta?
Interrogatory No. 5: Do you find that the breach of standard of care by defendant, CPC-East Lake Hospital, proximately caused damage to plaintiff, Parry Marchetta, which he would not have otherwise sustained?
Interrogatory No. 6: Express in terms of percentages, the degrees of negligence, if any, attributable to defendants, Doctor Charmaine Semeniuk and CPC-East Lake Hospital. The total of both percentages must equal 100%.
In the pretrial conference, the attorney for East Lake objected to the trial court's decision to include the charge concerning East Lake's possible vicarious liability for the damages allegedly suffered by the Marchettas. Moreover, East Lake filed a motion for summary judgment on that issue which was denied during the same pretrial conference. As explained in more detail below, East Lake claims that Dr. Semeniuk was not an employee, but an independent contractor, at the time she provided medical treatment to Parry. On appeal, East Lake argues that the inconsistency between the jury instructions and the jury interrogatories on this issue constitutes reversible error.
This court has explained a trial judge's duty as it relates to jury instructions and jury interrogatories as follows:
A trial judge has a duty to give instructions which properly reflect the law applicable in light of the facts of the particular case. In order to fulfill that duty, he must both require that the jury consider only the correct law and avoid confusing the jury. Likewise, jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. If the verdict form does not adequately set forth the issues to be decided by the jury (i.e. omits an applicable essential legal principal [sic] or is misleading and confusing), such interrogatories may constitute reversible error.
Guidry v. Bank of LaPlace, 94-1758, p. 3-4, (La.App. 4 Cir. 9/15/95), 661 So.2d 1052, 1055, writs denied, 95-2498, 95-2490, 95-2477 (La.1/5/96), 666 So.2d 295, 296 (citations omitted). When a court finds that jury instructions and interrogatories were tainted with legal errors which prejudiced one of the parties, it should set aside the jury findings and perform a de novo review of the record. Id. at 9, 661 So.2d at 1058.
Our close review of the record in this case convinces us that the jury instructions and the jury interrogatories on the vicarious liability issue were tainted with legal error. The issue of Dr. Semeniuk's employee status was vigorously contested during the trial. The jury should have been questioned on that issue. This court is unable to determine from the record whether the jury's assignment of liability to East Lake was based on the independent negligence of the hospital, or the *155 vicarious liability of Dr. Semeniuk. The distinction is important, as further explained below. Thus, we find that the tainted jury instructions and interrogatories prejudiced East Lake. Accordingly, in keeping with the principles set forth in Guidry, we will undertake a de novo review of the record evidence in order to determine whether the Marchettas carried their burden of proving that East Lake was liable for the damages suffered by Parry under either an independent liability theory or a vicarious liability theory.

Vicarious liability of East Lake
Under the provisions of La. C.C. art. 2320, "[m]asters and employers are answerable for the damage occasioned by servants and overseers, in the exercise of the functions in which they are employed." The concept established by this article is called "vicarious liability." However, vicarious liability does not apply when an independent contractor relationship exists. The Louisiana Supreme Court recognized long ago that vicarious liability, by its nature, mandates strict construction. Roberts v. State of Louisiana, 404 So.2d 1221 (La.1981).
This court has described the difference between an employer-employee and an independent contractor relationship as follows:
The key elements in an employer-employee relationship include the right of control or supervision, the selection and engagement of the workers, the payment of wages, and the power of dismissal. The independent contractor relationship exists when the work is of an independent nature with the independent contractor using his/her own judgment as to the best way to perform the task.
Remet v. Martin, 97-0895, p. 4-5 (La.App. 4 Cir. 12/10/97), 705 So.2d 1132, 1135 (citations omitted). The "single most important factor" for determining whether an employer-employee relationship exists is "the right of the employer to control the work of the employee." Roberts, 404 So.2d at 1225. See also Tabor v. Doctors Memorial Hospital, 501 So.2d 243, 247 (La.App. 1 Cir.1986). Generally, "[a] hospital's duty and corresponding liability for breach of that duty is in direct proportion to its right to control the medical treatment rendered there." Sibley v. Board of Supervisors of Louisiana State University, 490 So.2d 307, 314 (La.App. 1 Cir.1986) (emphasis added).
In the instant case, record documents indicate that Dr. Semeniuk entered an "independent contractor" agreement to perform as Program Director of the Children's Program at East Lake that became effective on November 1, 1993 and continued through the period that Parry was hospitalized. Prior to the time, Dr. Semeniuk served as a part-time "employee" of East Lake. By virtue of the independent contractor contract, called a "Director Agreement," Dr. Semeniuk agreed to serve as director a minimum of 10 hours per week, at a set salary. § 1.12 of the contract specifically acknowledges that all previous contracts between the parties were null and void. Moreover, the contract provides as follows:
3.1 In the performance of this Agreement, DIRECTOR shall at all times act and perform as an independent contractor providing professional and administrative services. CPC shall neither have nor exert any control or direction over the methods by which DIRECTOR shall perform his/her work and functions, the sole interest of CPC being that services covered by this Agreement shall be performed in a competent, efficient and satisfactory manner.
3.2 The parties hereto shall fully comply with all applicable provisions of law relating to licensing and regulation of relevant health professionals.
3.3 DIRECTOR understands and agrees that: (1) CPC will not withhold on behalf of DIRECTOR or any persons retained by him/her any sum for income *156 tax, unemployment insurance, social security or any other withholding applicable to employees, and CPC will not provide him/her or any persons retained by him/her any of the benefits provided to employees of CPC; (2) All of such payments, withholding and benefits, if any, are the sole responsibility of DIRECTOR; and (3) DIRECTOR will indemnify and hold harmless from any and all loss or liability, cost or expense arising with respect to such payments, withholdings and benefits, if any.
The record evidence indicates that Dr. Semeniuk's duties under the "Director's Agreement" were basically consultant duties, related to administrative issues within the hospital.
Moreover, the record is clear that Dr. Semeniuk's medical duties and her duties as director of the Children's Program were completely separate. As director of the Children's program, Dr. Semeniuk was required by the above-quoted contract to devote at least 10 hours a week to administrative duties for a set salary. However, both Dr. Semeniuk and East Lake CEO, Darlene Salvant, testified that East Lake exercised absolutely no control over Dr. Semeniuk's medical treatment of patients, including the decision to retain or discharge patients. Ms. Salvant specifically testified that employees other than physicians lack either the qualifications or the skill to control a physician's medical treatment of patients. The Marchettas claim that East Lake should be vicariously liable for the negligent performance of Dr. Semeniuk's medical dutiesi.e., her decision to retain Parry in treatment, not for the performance of her duties as director of the Children's Program.
The Marchettas make much of the fact that the written document evidencing Dr. Semeniuk's independent contractor status was not signed by Dr. Semeniuk until January 14, 1994; nor was it signed by the senior vice president of East Lake until January 24, 1994. However, other record documents, including a August 3, 1993 letter from Dr. Semeniuk, prove that the parties began operating under an oral independent contractor agreement on November 1, 1993. Under the provisions of La. C.C. art.1927, oral contracts are legally binding, "[u]nless the law prescribes a certain formality for the intended contract." The only requirements for confecting an oral contract are "consent of the parties established through offer and acceptance." Id.
The Louisiana Supreme Court has noted the fact that doctors "are often independent contractors." Roberson v. Provident House, 576 So.2d 992 (La.1991). Nevertheless, this court has previously indicated in Suhor v. Medina, 421 So.2d 271 (La. App. 4 Cir.1982) that the existence of an independent contractor agreement is not necessarily dispositive of the issue of whether a doctor is an independent contractor, as opposed to an employee, of a hospital. In Suhor, the court analyzed the facts of the case in order to determine that the physician was in fact an independent contractor, despite the existence of a "written contract that specified the physician was an independent contractor and the hospital did not have supervisory control over him." Id. at 272. The Suhor panel summarized the facts underlying its finding that the physician was an employee as follows:
In summary, Dr. Robinson works full time and exclusively for Mercy Hospital, must be present while "on duty", is paid a contractual, set salary but does not receive any patients' billings collected by the hospital. Dr. Robinson has no expenses to pay, works according to a predetermined schedule, has administrative responsibilities over hospital personnel, and must perform emergency services "to all who present themselves" and to in-patients when needed.
* * *
We conclude the facts in this particular case are overwhelming and leave no doubt that Mercy Hospital controls the *157 working time and physical activities of [the physician]. The employment contract relied upon by the hospital spotlights the extremely close relationship between the parties. This physician has offered his personal services for a stipulated sum and is voluntarily subject to supervision and various administrative controls. [The physician] is an integral part of the hospital's business and his close, personal economic relationship is obvious. The hospital's and physician's self-serving designation of "independent contractor" is a transparent shield designed solely to circumvent the law. The totality of these facts mandates that Dr. Robinson be categorized as an employee of Mercy Hospital which is answerable for any damages which occur in the exercise of his functions.
Id. at 274.
Our de novo review of the record evidence in this case clearly reveals the distinctions between this case and the Suhor case. Dr. Semeniuk worked neither fulltime nor exclusively for East Lake; in fact, Dr. Semeniuk also maintained a private practice and worked at another facility. Further, she was not paid a contractual, set salary for medical services, but separately billed patients for treatment.[3] Dr. Semeniuk also paid all of her own expenses. The record indicates that East Lake did not set a pre-determined schedule for the performance of Dr. Semeniuk's duties administrative duties as director of the Children's Unit nor, more importantly, for the performance of her medical duties. In this case, Dr. Semeniuk's independent contractor status was clearly more than a "self serving designation of `independent' contractor." East Lake simply did not exercise the type of control over Dr. Semeniuk's medical activities to justify a finding that she was an employee.
Because the jury in this case made no finding concerning the nature of Dr. Semeniuk's relationship to East Lake, and because we determined above that de novo review is appropriate under the facts of this case, we are not bound by the manifest error standard of review. Further, our de novo review convinces us that East Lake cannot be held vicariously liable for Dr. Semeniuk's medical treatment of Parry because she was an independent contractor, not an employee, at the time of her treatment of Parry. Control is the primary element indicating employee status, rather than independent contractor status; East Lake had no control of Dr. Semeniuk's medical decisions, including the decision to retain Parry for an extended period of time.

Independent liability of East Lake
In order to recover damages for the independent liability of a hospital in a medical malpractice case, the plaintiff must establish the following elements through expert medical testimony: (1) the standard of care applicable to the defendant health-care provider; (2) breach of the standard of care by the defendant health-care provider; (3) cause-in-fact between the breach and the damages suffered; and (4) actual damages. LSA-R.S. 40:1299.39. See Bailey v. State Through Department of Health and Human Resources, 96-2797 (La.App. 4 Cir. 5/21/97), 695 So.2d 557, 559, where this court applied those elements in a case against a psychiatric hospital.
In the instant case, the record is devoid of any testimonyexpert or otherwise establishing the standard of care for a psychiatric hospital. The Marchettas' primary argument on appeal is that Louisiana law, specifically La. Ch. C. art. 1460, imposes upon Darlene Salvant, the chief executive officer of East Lake at the time *158 of Parry's inpatient treatment, a non-delegable duty "to determine whether or not Parry Marchetta should be admitted or continue as a resident" of East Lake. However, the Marchettas misinterpret the statute. La.Ch.C. art. 1460 A states, in pertinent part, as follows:
A minor may be admitted to a treatment facility for inpatient care and treatment upon application of a parent... to the director of a treatment facility if the director finds that the minor has a mental illness or suffers from substance abuse which has a substantial adverse effect on his ability to function and requires care and treatment in an institution. Within twenty-four hours of admission, the minor shall be examined by a physician who shall set forth in detail in the patient's medical record the reasons for the continued need of confinement and treatment of the minor....
The above statement mentions the "director" of the treatment center only in connection with the admission of a minor. Even under the statute, the decision concerning the continued treatment of minor is left to a physician. In the instant case, all of the experts, including the experts presented by the Marchettas, testified that the decision to admit Parry was proper, that the only issue is the propriety of the length of his hospitalization. Moreover, the Marchettas have failed to show either that Ms. Salvant was the "director" of the facility or that the duty imposed on the director cannot be delegated to medical personnel. Ms. Salvant testified that she was the "chief executive officer" of East Lake and that she is an accountant. Obviously, she is not qualified to make decisions concerning medical treatment. Moreover, as discussed above, Dr. Semeniuk was the "director" of the Children's Program at East Lake. Thus, we find no merit in the arguments made by the Marchettas concerning the hospital's statutory duty.
The Marchettas also point to the testimony of Darlene Salvant, chief executive officer of East Lake at the time of Parry's inpatient treatment, as evidence that the hospital committed medical malpractice in failing to timely discharge Parry from treatment, as well as the testimony of Dr. Patrick Dowling, the expert in child psychiatry who testified on behalf of Dr. Semeniuk. This court has allowed a medical malpractice plaintiff to rely on the testimony of a defendant/physician or a defense expert to establish the standard of care. Taplin v. Lupin, 97-1058, p. 3 (La. App. 4 Cir. 10/1/97), 700 So.2d 1160, 1161. The brief filed by the Marchettas in this court details the elements of Ms. Salvant's testimony which they believe is sufficient to establish malpractice on the part of the hospital. Although Ms. Salvant did testify concerning hospital procedures and policies at East Lake, neither Ms. Salvant's testimony nor Dr. Dowling's testimony addressed the standard of care owed by members of the staff of a psychiatric hospital, other than a psychiatrist, to institute procedures leading to the release of a patient, when the psychiatrist has ordered his continued inpatient treatment the only issue in this case. Most of the testimony that the Marchettas cite deals with issues peripheral to the only issue presented by this appealwhether the hospital committed medical malpractice by failing to release Parry at an earlier date. Thus, our de novo review of the record evidence reveals no independent medical malpractice liability on the part of East Lake.

Conclusion
Accordingly, the trial court judgment holding East Lake 50 percent liable for the damages suffered by the Marchettas is reversed.
REVERSED.
JONES, J., CONCURS IN PART; DISSENTS IN PART WITH REASONS.
*159 JONES, J. CONCURRING IN PART; DISSENTING IN PART WITH REASONS.
The jury found the CPC of Louisiana, Inc., d/b/a East Lake Hospital was liable along with Dr. Charmaine Semeniuk and assessed damages in favor of the plaintiffs in this cause of action. I agree with the majority that the plaintiff failed to establish an independent breach of the standard of care by East Lake. However, I would still find that the jury did not commit manifest error in finding the hospital vicariously liable for the action of Dr. Semeniuk. Therefore, I would affirm the judgment of the trial court on the issue of East Lake's liability, but would reverse on the issue of damages.
The jury was presented with evidence as to whether Dr. Semeniuk was an independent contractor with the hospital or whether she was in fact an employee of the hospital. The hospital argued that Dr. Semeniuk was an independent contractor and presented a contract of employment suggesting that their relationship was one of independent contractors. However, the plaintiffs presented evidence indicating that the duties and functions of the doctor were completely consistent with those of her employment prior to the execution of this contract.
It is generally recognized that where a physician is the employee of a hospital and is sued by patient for particular injuries negligently inflicted in the course of the patient's treatment, the hospital may be held liable for injuries sustained by patient under the doctrine of respondeat superior. Suhor v. Medina, 421 So.2d 271 (La.App. 4 Cir.1982).
Submitting an employment contract that specifies that the physician is an independent contractor is not dispositive of the issue. Id. at 272. Our Supreme Court has stated the single most important factor to consider in deciding whether the employer-employee relationship exists is the right of the employer to control the work of the employee. Roberts v. State of Louisiana, etc., 404 So.2d 1221 (La.1981). Under the director's agreement East Lake still controlled Dr. Semeniuk's base salary, paying her a flat rate of $3,750 per month and the number of hours she worked namely, 10. Although the director's agreement, in paragraph 3.1 expressly relinquishes control over the doctor's actions one the one hand, it also lists the performance "of other tasks as directed by the Consulting Board and the Administrator" as part of her duties and responsibilities.
In this case, our review of the record also reveals that the new contract was not signed until after Perry Marchetta was admitted and therefore Dr. Semeniuk was still operating under the previous contract which stipulated to her position as an employee. In addition, we find that even if there was a meeting of the minds as to her new title as an independent contractor, there was no change in the doctor's duties under the new contract. Therefore, the change in title will not over-ride her status as an employee nor the hospital's resulting responsibility for her negligence.
In conclusion, the jury was presented with a question of fact as to whether there was a contractual relationship. The jury by its verdict rejected the argument of the hospital that Dr. Semeniuk was in fact an independent contractor and chose to believe that she was in fact an employee of the hospital. Thus, the negligence attributable to Dr. Semeniuk in her capacity as an employee of the hospital also renders the hospital liable for her conduct.
For the reasons provided above, I would reverse the jury determination that East Lake hospital is liable to the plaintiffs for breach of the medical standard of care. However, I would affirm the jury's determination that Dr. Semeniuk was an employee of East Lake and that East Lake is, therefore, vicariously liable for Dr. Semeniuk's negligence.
NOTES
[1] Defendant Dr. Charmaine Semeniuk, who was found liable for the other 50 percent of Parry's damages, filed an appeal in this court, but settled with the plaintiff before the appeal was heard. Thus, we pretermit any discussion of the issues raised by Dr. Semeniuk.
[2] On appeal, East Lake assigned nine separate errors to the trial court judgment. However, because we find merit in the arguments concerning liability, we pretermit discussion of the other assignments of error.
[3] The Marchettas claim that Dr. Semeniuk was not responsible for her own billing in this case because of the existence of a special agreement between East Lake and Mr. Marchetta's insurer. However, the record indicates that Dr. Semeniuk did bill the insurance company. The fact that she ultimately did not receive the total amounts reflected in the bills does not mean that East Lake was her employer.