884 So.2d 648 (2004)
Jean BERTHELOT
v.
Dr. William A. STALLWORTH.
No. 2003-CA-1771.
Court of Appeal of Louisiana, Fourth Circuit.
September 14, 2004.
*649 Robert A. Preston, Jr., New Orleans, LA, for Plaintiff/Appellant, Jean Berthelot.
Al M. Thompson, Jr., Berrigan, Litchfield, Schonekas, Mann, Traina and Thompson, L.L.C., New Orleans, LA, for Defendants/Appellees, The Estate of Dr. William A. Stallworth and Evanston Insurance Company.
Simeon B. Reimonenq, Jr., Seth A. Schmeeckle Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Defendants/Appellants, Travelers Health Network of Louisiana, Inc., Metrahealth, Inc., United Healthcare Of Louisiana, Inc.
(Court composed of Judge JAMES F. MCKAY, III, Judge TERRI F. LOVE, and JUDGE MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
This case arises from the alleged medical malpractice of a physician who would not order a mammogram for his patient, the plaintiff, because she manifested no *650 objective symptoms and was not yet 40 years of age but who was shortly thereafter diagnosed with breast cancer.
On 7 January 1993, Jean Valette Berthelot ("Berthelot") visited Jacquelyn Wycheck, M.D., her gynecologist, for a wellness examination. During the course of the examination, Dr. Wycheck performed a breast examination and told Berthelot that the results were normal. However, she recommended that Berthelot, who was 35 years old at the time, undergo a mammogram. She told Berthelot that because she was not her primary care physician, under the rules of the HMO with whom Berthelot was insured, she could not order a mammogram because her breast examination was normal. Berthelot then scheduled an appointment with her primary care physician, William Stallworth, M.D., a general practitioner, so that he could order a mammogram as recommended by Dr. Wycheck.
On 5 February 1993, Berthelot visited Dr. Stallworth and asked him to order a mammogram. He advised her that he would not order the test, as he did not order mammograms for women under 40 years of age absent symptoms or a history of breast cancer in the immediate family. Berthelot called Dr. Wycheck and told her that she would not be able to have the mammogram, as Dr. Stallworth had refused to order one and she could not afford to pay for one out of her own pocket. Dr. Wycheck did not contact Dr. Stallworth to discuss her recommendation for a mammogram and Berthelot apparently did not pursue the matter further at that time.
In the latter part of May 1993, Berthelot performed a self-examination of her breasts and felt a lump approximately the size of a small pea in her breast. She returned to Dr. Stallworth, who promptly ordered a mammogram. The mammogram revealed a sizable tumor that was determined to be cancerous. Berthelot was referred to a surgeon, Alan Stolier, M.D., who advised her that her entire breast would have to be removed given the size of the tumor. He also told her that, without surgery, she had only five or six months to live.
On 22 June 1993, Berthelot underwent a left modified radical mastectomy, right simple mastectomy, and had seven lymph nodes removed. Following surgery, Berthelot was treated by an oncologist, Milton Seiler, M.D., and underwent four courses of chemotherapy. Following her chemotherapy, Berthelot was referred to Thomas Weatheral, M.D., who administered radiation therapy for six weeks.
At all relevant times of her diagnosis and treatment, Berthelot was covered by an HMO plan provided by her employer, the Orleans Parish School Board, through Travelers Health Network of Louisiana, Inc. ("Travelers Health Network"). Under the plan, Berthelot was to choose a primary care physician, who would act as the "gatekeeper" of her care and whose authorization was necessary to receive a mammogram. Berthelot chose Dr. Stallworth as her primary care physician, as Dr. Stallworth was under contract to Travelers Health Network as a designated primary care physician. Under the terms of the contract between Travelers Health Network and Dr. Stallworth, Dr. Stallworth was designated as an independent contractor.
On 31 May 1994, Berthelot filed suit against Dr. Stallworth[1] and his medical malpractice insurer, Evanston Insurance *651 Company, alleging that Dr. Stallworth committed medical malpractice by refusing to order a mammogram in February 1993 after Dr. Wycheck had recommended it. Berthelot alleged that Dr. Stallworth's failure to order the mammogram was a breach of the standard of care and that "as a result of Dr. Stallworth's failure to diagnose the cancer and/or order mammograms, petitioner's cancer was allowed to grow and spread."
On 4 June 1996, Berthelot filed a supplemental and amending petition, naming as defendants Travelers Health Care of Louisiana, Inc., Travelers Insurance Company, Metrahealth Care Plan of Louisiana, Inc., Metrahealth Insurance Company, United Health Care of Louisiana, Inc., and United Insurance Company (collectively hereinafter "Travelers"). Berthelot alleged that Dr. Stallworth, in his capacity as a primary care physician for Travelers, was the agent of Travelers and that his negligence could be imputed to Travelers under a theory of respondeat superior. Specifically, Berthelot contended that because Travelers established medical and financial restrictions on the treatment rendered by its primary care physicians, it was the de facto employer of Dr. Stallworth.
A jury trial commenced on 17 March 2003 and lasted eight days. After hearing testimony from Berthelot, her treating physicians, representatives from Travelers, and a number of expert witnesses, the trial court granted a motion for directed verdict filed by Dr. Stallworth and Evanston Insurance Company on the grounds that the plaintiff failed to establish a standard of care and, ergo, Dr. Stallworth violated no applicable standard of care. As such, the only issues remaining before the jury during its deliberations concerned the liability of the remaining insurance companies and what, if any, damages flowed from any finding of liability.
The jury returned a verdict in favor of Berthelot against Travelers in the amount of $636,506.00. Through the jury interrogatories submitted by the trial court, the jury determined that Travelers gave Berthelot reason to believe that Dr. Stallworth had the authority to act on behalf of Travelers, thus making him its apparent agent. The jury further found that Berthelot reasonably relied on the "manifested authority," and that Dr. Stallworth's failure to order a mammogram was "the result of some motive of interest or ill will." It is through this apparent agency that Travelers was found liable to Berthelot.
Travelers appealed the trial court's judgment, asserting eight assignments of error. Generally, they assert that the trial court's legal error denied Travelers of "substantial rights." Specifically, Travelers asserts that the trial court erred by (1) denying Travelers' motion for directed verdict and JNOV; (2) refusing to provide an instruction on whether Travelers breached its contract with Berthelot; (3) refusing to admit into evidence and take judicial notice of certain facts; and (4) allowing Dr. Wycheck to give opinion testimony. Further, Travelers asserts that the jury erred in finding that Dr. Stallworth was Travelers' agent and computing a manifestly erroneous award for Berthelot.
Berthelot appealed the trial court's dismissal of Dr. Stallworth and his medical malpractice insurer, asserting that in light of the fact that the jury found that Berthelot "suffered injury as a result of Dr. Stallworth's failure to order a mammogram" and further that "Dr. Stallworth's failure to order a mammogram was the result of some motive of interest or ill will," it is nonsensical that Dr. Stallworth be dismissed from this litigation.
First, Travelers takes issue with the trial court's instruction of the jury as *652 legally erroneous, confusing, and misleading. The trial judge instructed the jury, in pertinent part:
In resolving the issue of liability in this case, there are certain rulings of law that you must consider. Louisiana law provides HMOs include an annual pap smear for cervical cancer and a minimum mammography examination which is one baseline mammogram for any woman who is 35 through 39 years of age. Under Louisiana law, an obligation is a legal relationship whereby a person called the obligor is bound to render a performance in favor of another called an obligee. Performance may consist of giving, doing or not doing something. An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance. Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.
Travelers objected to the instruction, but the objection was overruled. The jury apparently needed further guidance on the law in question, as it asked the judge for a clarification during deliberations. The trial court answered the jury's question, which was not transcribed by the court reporter, as follows:
Your question is when did state law go into effect where mammograms had to start at 35 years of age? You don't need to know when the state law went into effect. I gave you the law and I'll just read that portion of the law that applies.
Louisiana law provides that HMO law that HMO include an annual pap smear for cervical cancer and a minimal mammographic, minimal mammography examination, which is one baseline mammogram for any woman who is 35 through 39 years of age.
Travelers argues that the instruction given to the jury implies that Travelers was under a legal duty to ensure that Berthelot receive a baseline mammogram at age 35, even though Travelers had no policy in effect by which its primary care physicians were prohibited from ordering baseline mammograms earlier than age forty. Further, it is undisputed that had Dr. Stallworth ordered the mammogram when originally requested by Berthelot, Travelers would have paid for the test.
In support of her argument that Travelers breached a duty to her when Dr. Stallworth refused to order a baseline mammogram in February 1993, Berthelot cites Louisiana's HMO law, La. R.S. 22:215.11, which provides, in pertinent part:
(1) Any health coverage plan which is delivered or issued for delivery in this state shall include benefits payable for an annual Pap test and minimal mammography examination as provided in this Subsection.
(2) In this Subsection, "minimum mammography examination" means mammographic examinations performed no less frequently than the following schedule provides:
a. One baseline mammogram for any woman who is thirty-five thirty-nine years of age.
b. One mammogram every twenty-four months for any woman who is forty through forty-nine years of age or more frequently if recommended by her physician.
c. One mammogram every twelve months for any woman who is fifty years of age or older.
(3) The annual Pap test for cervical cancer and the minimum mammography examination shall be covered when *653 rendered or prescribed by a physician or other appropriate health care provider licensed in this state and received in any licensed hospital or in any other licensed public or private facility, or portion thereof, including but not limited to clinics and mobile screening units.
[Emphasis supplied.]
Although Berthelot reads into the law an affirmative duty on the part of an HMO to require its physicians to order mammograms for female patients upon reaching the age of 35, the statute clearly only prescribes when an insurance company must pay for a mammogram, and does not govern or direct when a physician under contract with any HMO should order one. La. R.S. 22:215.11 merely provides that an HMO must pay for a mammogram for a woman 35 years of age if ordered by a physician. Any implication of a legal duty on the part of a physician to order a mammogram based merely on the age of the woman is legal error. Further, Dr. Stallworth testified by deposition, and a representative of Travelers confirmed, that he was not required to receive authorization from the HMO to order a mammogram. Rather, it was not his practice to order a baseline mammogram for a woman with no objective symptoms of breast disease or a family history of breast disease when the woman was younger than 40 years of age.
We agree with Travelers that the trial court's instruction to the jury was legally erroneous. This Court has described a trial court's duty regarding jury instruction as follows:
A trial judge has a duty to give instructions which properly reflect the law applicable in light of the facts of the particular case. In order to fulfill that duty, he must both require that the jury consider only the correct law and avoid confusing the jury.
Fryson v. Dupre Transport, Inc., XXXX-XXXX, p. 8 (La.App. 4 Cir. 8/29/01), 798 So.2d 1012, 1019 quoting, Guidry v. Bank of LaPlace, 94-1758, pp. 3-4, (La.App. 4 Cir. 9/15/95), 661 So.2d 1052, 1055. The initial jury instruction regarding La. R.S. 22:215.11, as well as the trial court's response to the question posed by the jury during deliberations, implies that there is a legal duty on the part of Travelers to ensure that Berthelot undergo a mammogram upon reaching the age of 35, when there is quite simply no such duty. As such, we find that the trial court's jury instruction was erroneous and mislead the jury with regard to its evaluation of Travelers' liability.
Because the trial court committed legal error in giving a vague and misleading jury charge that prejudiced Travelers, we must set aside the jury's verdict and perform a de novo review of the record. Id. at 1019. Although we find that there was no duty on the part of Travelers to require Dr. Stallworth to order a mammogram for Berthelot under Louisiana law, the record on appeal reveals that Berthelot also advanced a theory of respondeat superior in her suit against Travelers, ostensibly based upon a quasi-employment relationship between Travelers and Dr. Stallworth.
We are mindful that "vicarious liability does not apply when an independent contractor relationship exists." Marchetta v. CPC of Louisiana, Inc., 99-0485, p. 6 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 155. In Marchetta, a child was admitted to a hospital for psychiatric treatment after being referred by a physician who provided treatment at the hospital pursuant to a contract. The plaintiff asserted that the physician was an employee of the hospital, and should be found liable for any *654 malpractice committed by the physician at that facility. However, this court noted that in determining whether vicarious liability applies in a particular case, it must examine several fact-sensitive questions, including whether the purported employer had (1) the right of control or supervision; (2) the selection and engagement of the workers; (3) the payment of wages; and (4) the power of dismissal. Marchetta, p. 6, 759 So.2d at 155, quoting, Remet v. Martin, 97-0895, pp. 4-5 (La.App. 4 Cir. 12/10/97), 705 So.2d 1132, 1135. Further, we noted that the single most determinative factor governing whether a party is an independent contractor or an employee is "the right of an employer to control the work of the employee." Id., quoting, Roberts v. State of Louisiana, 404 So.2d 1221 (La.1981). The testimony presented at trial unquestionably preponderates that Travelers did not control the medical practice of Dr. Stallworth. While Travelers determined whether it would pay for services provided to its members by Dr. Stallworth, it did not, for purposes of this case, proscribe how or when mammograms were to be ordered or administered. In fact, it is clear that under the policy covering Berthelot, Travelers would have paid for the mammogram had Dr. Stallworth ordered it in February 2003. And, as noted above, Dr. Stallworth testified that he was not required to receive any authorization to order the mammogram. We also note that Dr. Stallworth had been Berthelot's physician before Travelers provided her coverage and that she would have been able to change primary care physicians under the Travelers plan at any time. Thus, any finding that Travelers "practiced medicine" through Dr. Stallworth or otherwise controlled his practice is not supported by the evidence in the record before us. We find that no employment relationship existed between Travelers and Dr. Stallworth. As such, the doctrine of respondeat superior is inapplicable to the case at bar.
With regard to Berthelot's assignment of error, we find that the trial court did not err in granting the directed verdict in favor of Dr. Stallworth and his medical malpractice insurer. The directed verdict was granted prior to jury deliberations on the grounds that Berthelot failed to carry her burden of proof regarding the standard of care. A trial court is vested with much discretion in granting a directed verdict. Lott v. Lebon, 96-1328, p. 4 (La. App. 4 Cir. 1/15/97), 687 So.2d 612, 615. However, a directed verdict should only be granted when, after a review of the evidence presented at trial, reasonable persons could not disagree as to the outcome of the case. Id. A review of the record on appeal confirms the trial court's finding that insufficient evidence was put forth to establish the standard of care regarding the ordering of baseline mammograms. In fact, although plaintiff's counsel asked the testifying physicians generally whether breast cancer is more easily treated if diagnosed earlier, no testimony was elicited regarding the age generally accepted in the medical community as appropriate for a baseline mammogram. Even Dr. Wycheck, Berthelot's gynecologist who first recommended the mammogram, admitted in her deposition testimony that there are several standards in the medical community for ordering baseline mammograms, and that different physicians in the community might have different standards. Because Berthelot failed to put forth any evidence that could assist the jury in determining the proper standard of care on this issue, the trial court did not err in granting a directed verdict in favor of Dr. Stallworth and his medical malpractice insurer.[2]
*655 After a review of the record and evidence, we find that the trial court erred in failing to grant the motion for directed verdict in favor of Travelers but affirm its ruling with regard to the dismissal of Dr. Stallworth and Evanston Insurance Company.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] Dr. Stallworth was deceased at the time of trial and, consequently, his estate was substituted as a defendant in the litigation. For purposes of this opinion, we do not distinguish between the estate of Dr. Stallworth and Dr. Stallworth as juridical entities.
[2] Berthelot submitted to this court a number of documents purporting to establish a standard of care regarding the ordering of mammograms, but we have declined to review these materials, as they were not presented to the jury at trial or proffered as evidence, and therefore are not part of the record on appeal.