838 So.2d 895 (2003)
Susan ARRINGTON, et al.
v.
GALEN-MED, INC., d/b/a Lake Area Medical Center.
No. 02-987.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
Oliver "Jackson" Schrumpf, Law Offices of Oliver "Jackson" Schrumpf and Charles Schrumpf, Sulphur, LA, for Plaintiffs/Appellees, Susan Arrington, et al.
Benjamin W. Mount, Bergstedt & Mount, Lake Charles, LA, for Defendant/Appellant, Galen-Med, Inc., d/b/a Lake Area Medical Center.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN, and BILLY H. EZELL, Judges.
THIBODEAUX, Judge.
In this suit for medical malpractice, defendant, Galen-Med, Inc., d/b/a Lake Area Medical Center ("LAMC"), appeals the judgment of the trial court rendered pursuant to a jury verdict. The jury found that LAMC was liable for the negligent conduct of Dr. Ricardo Samudia, who failed to properly diagnose Billy Arrington with pulmonary embolism, resulting in his death. Additionally, defendant asserts that the jury verdict form was misleading, ambiguous, and confusing as to the apportionment of liability, resulting in a verdict contrary to the law and evidence presented to the jury.
We disagree. We find that the jury's verdict is reasonable and that the *896 trial court judge properly denied LAMC's motion for J.N.O.V. on the issue of the alleged misleading jury verdict form. Great deference is given to the trial court on questions of fact. We may not set aside a jury's findings of fact absent manifest error. Stobart v. State through Dep't of Transp., 617 So.2d 880 (La.1993).

I.

ISSUES
We shall consider the following issues on appeal:
(1) whether the trial court erred in finding that Galen-Med, Inc., d/b/a Lake Area Medical Center is liable for the negligent conduct of Dr. Ricardo Samudia?
(2) whether the trial court erred in not finding the verdict sheet misleading, ambiguous, and confusing?

II.

FACTS
On October 25, 1994, Billy Arrington arrived at the emergency room of Lake Area Medical Center complaining of shortness of breath. The attending physician, Dr. Ricardo Samudia, examined, treated, prescribed medication, and released Mr. Arrington with instructions to follow-up with his family physician. Dr. Samudia, an independent contractor of LAMC's emergency room, had worked an 18-hour shift at Calcasieu Cameron Hospital prior to arriving for his shift at LAMC. Plaintiff, Susan Arrington[1], asserted that Dr. Samudia was clearly impaired when he treated her husband in the emergency room. Plaintiff relies particularly on the American College of Emergency Physicians ("ACEP") guidelines which state that shifts longer than 12 hours for emergency room physicians should be avoided wherever possible. Dr. Samudia had literally worked almost 24 hours from October 23-24, 1994, before treating Mr. Arrington.
LAMC had formed a contract with E.R. Physicians Group, Inc. ("ERPG"), a physician service provider, to provide qualified emergency room physicians for administering medical care to its patients. The thrust of LAMC's argument is that Dr. Samudia, as an independent contractor, was not an employee of the hospital. It, therefore, cannot be held vicariously liable for the actions of this physician. LAMC asserts that patients of the emergency room were aware of the physicians' status as independent contractors. In opposition, plaintiff asserts that LAMC has a duty of care to its patients, which includes the prevention of unsafe and hazardous conditions. Plaintiff asserts that the failure to prevent a physician who is clearly impaired from administering medical care is an unsafe condition.
Mr. Arrington continued to suffer from shortness of breath and other symptoms when he returned home. The gravity of the symptoms required calling an ambulance to his home on October 28, 1994. Attempts to resuscitate Mr. Arrington failed. He died that same day in the emergency room of LAMC. A coroner's report indicated that the cause of death was pulmonary embolism or blood clots within the lungs.
Plaintiff, Susan Arrington, filed a medical malpractice claim with the Louisiana Patient's Compensation Fund. Asserting several causes of action against Dr. Samudia and LAMC, the plaintiff asserted that Mr. Arrington's death was a direct result *897 of Dr. Samudia's failure to recognize the severity of his condition, to administer tests which would have indicated the seriousness of his illness, to diagnose him with pulmonary embolism, to admit him to the hospital, to consider his treating physician's, Dr. Paul Comeaux's, orders, and failure to have him examined by a specialist. After convening a panel of the Medical Review Board, the majority of the panel found that Dr. Samudia failed to meet the appropriate standard of care as charged in the plaintiff's complaint and that Dr. Samudia's conduct was directly related to Mr. Arrington's death.
On February 19, 1999, Dr. Samudia, ERPG, and Evanston Insurance Company settled with the plaintiff for $100,000. On August 15, 2000, the Louisiana Patient's Compensation Fund also settled with the plaintiff for $390,000 plus $90,000 in interest and $20,000 in costs on behalf of Dr. Samudia and ERPG. All defendants were able to resolve their disputes outside of trial, except LAMC.
At trial, the jury rendered a verdict in favor of the plaintiffs. LAMC was apportioned 20% of the liability for the actions of its ER nurse, and was held 60% liable for the conduct of Dr. Samudia. The remaining 20% fault was apportioned to ERPG. The trial judge entered judgment based on the jury's verdict. LAMC timely filed a motion for J.N.O.V. The trial court denied the J.N.O.V. LAMC now appeals.

III.

LAW AND DISCUSSION

Hospital Liability for Conduct of ER Physician
Appellant asserts that the jury erred in finding LAMC responsible for the actions of Dr. Samudia. We disagree.
LAMC's chief argument is that it is not responsible for the actions of Dr. Samudia, an independent contractor. LAMC relies on the Professional Services Agreement entered into by and between ERPG and LAMC to demonstrate that the hospital possessed no apparent authority over their ER physicians to deem them employees of LAMC.
In Powell v. Fuentes, 34,666 (La.App. 2 Cir. 5/9/01); 786 So.2d 277, writ denied, 01-1675 (La.9/21/01); 797 So.2d 674, the second circuit addressed the issue of whether a hospital was liable for the actions of an emergency room physician, who was an independent contractor. In Powell, the plaintiff was treated in the emergency room of Winn Parish Medical Center ("WPMC") for an injury to her right foot. Dr. Fuentes, the attending ER physician, failed to x-ray Powell's foot, and her foot became infected due to a "foreign object that was embedded in the wound." Id. at 278. As a result of this infection, Powell was hospitalized for eight days. Plaintiff filed suit against Dr. Fuentes and WPMC for failure to remove the foreign object from her foot resulting in infection. Like LAMC, WPMC alleged that Dr. Fuentes was an independent contractor, rather than an employee of the hospital. Consequently, it should not be held liable for the acts of Dr. Fuentes.
In Powell, the second circuit applied its analysis in Campbell v. Hospital Service District No. 1, Caldwell Parish, 33,874 (La.App. 2 Cir. 10/4/00); 768 So.2d 803, writ denied, 00-3153 (La.1/12/01); 781 So.2d 558, to resolve this dispute:
Generally, employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed. La.C.C. art. 2320. In contrast, a principal generally is not liable for the negligence of an independent contractor *898 while performing his contractual duties. Two exceptions to this general rule exist: (1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor.
Of primary concern is whether the principal retained the right to control the work. The important question is whether, from the nature of the relationship, the right to do so exists, not whether supervision and control was actually exercised. The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis.
The existence of an independent contractor agreement is not necessarily dispositive of the issue of whether a doctor is an independent contractor, as opposed to an employee of a hospital, and courts will inquire as to the real nature of the relationship and the degree of control exercised or ability of control by the hospital over the doctor's activities. Whether an emergency room physician is an employee or an independent contractor is a factual issue turning on the control exercised by the hospital over his activities. In fact, "[a] hospital's duty and corresponding liability for breach of that duty is in direct proportion to its right to control the medical treatment rendered there."
Powell, 786 So.2d at 281-82 (quoting Campbell, 768 So.2d at 807) (Citations omitted) (Emphasis added).
Like LAMC, WPMC submitted a copy of its agreement with Southern Emergency Physicians ("SEP"), who employed Dr. Fuentes. Also, a copy of WPMC's by-laws was filed by the plaintiff. Emergency room physicians of WPMC were considered medical staff, having medical staff privileges. Additionally, the hospital was responsible for credentialing the doctors who worked in the emergency room, though they worked under SEP. Further, the agreement stated that all supplies, equipment, and facilities would be furnished by the hospital. WPMC was also responsible for maintaining medical records and for billing patients. As a result, the second circuit concluded that the "documents demonstrate[d] that Dr. Fuentes was bound by WPMC rules which controlled the activities of an emergency room physician.... Based upon this record, WPMC [was] not entitled to summary judgment." Id. at 283-84.
We find that there are similar provisions in the agreement between LAMC and ERPG, demonstrating LAMC's right to control and supervise their emergency room physicians. Under Section 5.5 of the Professional Services Agreement, LAMC retained "responsibility for the performance of [the] Contractor [ERPG] and [the] Contractor's representatives [ER physicians] as and to the extent required by law and the accreditation standards applicable to Facility [LAMC]." Additionally, each physician that worked for LAMC "must be accepted by the Facility's Chief Executive Officer." LAMC was also responsible for the billing of patients and the maintaining of patients' records. ERPG had no involvement in these matters. Additionally, LAMC was responsible for providing "the space for the service plus any expendable supplies, equipment, and services necessary for the proper operation of the service." Further, "[t]he Director of the Service [ERPG] shall direct and supervise the technical work and services of such department personnel.... However, Facility [LAMC] retains full administrative control and responsibility for all such Service personnel."
We also find, as in Powell, evidence that LAMC considered its emergency room physicians as medical staff and that *899 these physicians were subject to the "Rules and Regulations of The Medical Staff of Lake Area Medical Center." Under Section VII, Emergency Services, "Emergency Services will be provided by contract physicians who will be members of the organized Medical Staff. They will be credentialed by the Department of Medicine by the process specified in the Medical Staff Bylaws." We further find that the director of emergency services also had the right to monitor emergency patient care and take proper action based on its findings. From this evidence, we can conclude that LAMC had apparent authority over the actions of Dr. Samudia. As stated in Campbell, 768 So.2d at 810 (citations omitted) (footnote omitted):
We find this situation-the providing of emergency services-distinguishable from that of a surgeon or other doctor holding hospital privileges contracting with a patient, where the physician is typically held to be an independent contractor. This is because the patient is seeking treatment through a hospital emergency room with no choice as to treating physician. In fact, other states have long questioned the propriety of permitting hospitals to shield themselves from liability by labeling their emergency room physicians as "independent contractors," imposing liability upon hospitals despite independent contractor relationships erected to shield them from liability. This is because an apparent, or ostensible agency is created by a hospital "holding itself out" as a full service facility and creating the image that its physicians are employees of the hospital, and not independent contractors.... "[I]t would therefore be patently unfair to bind the patient to the ramifications of a contract that is neither public knowledge or applicable to all emergency room situations between a physician staffing service and the hospital."
For the above reasons, we find that the jury's findings of fact are reasonable, and its imposition of liability upon LAMC was not manifestly erroneous; indeed, it was manifestly correct.

Jury Verdict Form
LAMC asserts that the verdict sheet given to the jury was confusing, misleading, and ambiguous. We disagree.
On November 16, 2001, the jury returned a verdict apportioning 60% of the fault to the actions of Dr. Samudia, 20% to LAMC for the conduct of its ER nurse, and 20% to ERPG. According to the appellant, the jury's verdict can be interpreted in two ways. Appellant asserts that the verdict can be interpreted that (1) LAMC is liable for 20% of fault and Dr. Samudia is 60% at fault or that (2) LAMC is liable for both the 20% of fault attributable to the hospital and Dr. Samudia's 60% of fault totaling 80%. Even if appellant's contentions are true, this court cannot properly address this issue. We find no evidence in the record that defendant objected to the jury instructions pursuant to La.Code Civ.P. arts. 1793 and 1812.
The Court:
At this time, we will go ahead and have any arguments or comments on the jury instructions and the verdict form. We'll start with Mr. Schrumpf.
Mr. Schrumpf:
Your honor, I don't have any objections. I thought they were fair and reasonable.
The Court:
Mr. Shelton?
Mr. Shelton:
Your honor, as far as the jury charge, I had no problem with that. The verdict sheet, as we discussed yesterday and again this morning, I had a couple of issues on that. The first question, as we discussed yesterday, I thought actually *900 should be two separate questions.... Secondly, ... I thought there should have been an additional word in there before "contribute" saying did it "substantially contribute"? That's the only objection.
Mr. Mount:
... I would join Mr. Shelton in that objection to Question No. 1 on the verdict sheet. And then I ... would object to the Court not including in its charge the submitted charges of No. 5, 16, 17, and 20 on behalf of Lake Area Medical Center and ask that these charges be made a part of the record.
The Court:
Let those be made a part of the record and let the objection be noted. And the Court, of course, feels like the instructions given fairly represent both side and the law in the case.
In the record, we find that objections were made as to the verdict form regarding sentence structure (making one sentence into two sentences) and the addition of a word. However, no objection was made in reference to the verdict form being ambiguous, misleading, or confusing. "By failing to object to any alleged flaws in the interrogatories before the jury retired, plaintiffs have waived the objection on appeal. La.Code Civ.P. art. 1812." Sampson v. Lemoine, 94-1568, pp. 2-3 (La. App. 3 Cir. 5/3/95); 657 So.2d 181, 183.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the trial court pursuant to a jury verdict finding Lake Area Medical Center responsible for the actions of Dr. Ricardo Samudia is affirmed. All costs are assessed to the defendant-appellant, Galen-Med, Inc., d/b/a/ Lake Area Medical Center.
AFFIRMED.
NOTES
[1] Billy Arrington's widow, Susan Arrington, filed suit individually and on behalf of her two daughters, Joelle Arrington and Laura Arrington, who is now a major. Since Mrs. Arrington filed suit on behalf of her daughters, we will refer to her as the plaintiff.