768 So.2d 803 (2000)
Faye CAMPBELL, Debbie Ann Campbell Watts and Nelda Campbell Harmond, Plaintiffs-Appellants,
v.
HOSPITAL SERVICE DISTRICT NO. 1, CALDWELL PARISH d/b/a Citizens Medical Center and Dr. Henry H. Nguyen, Defendant-Appellee.
No. 33,874-CA.
Court of Appeal of Louisiana, Second Circuit.
October 4, 2000.
Rehearing Denied October 26, 2000.
*805 Street & Street by C. Daniel Street and D. Randolph Street, Monroe, Counsel for Appellants.
Watson, Blanche, Wilson & Posner by P. Chauvin Wilkinson, Jr., Baton Rouge, Counsel for Appellee.
Blue Williams by Kurt S. Blankenship, Metairie, Counsel for Dr. Henry H. Nguyen.
Before NORRIS, C.J., and STEWART and KOSTELKA, JJ.
NORRIS, Chief Judge.
In this medical malpractice action, plaintiffs appeal the grant of summary judgment to the defendant medical center. Finding that genuine issues of material fact indeed remain, we reverse and remand.

Factual Background
On the evening of May 21, 1995, 78 year-old Mr. Eugene Campbell arrived at the emergency room of Citizen's Medical Center at approximately 8:15 p.m., complaining of chest pains which radiated into his jaws and arms. He was also sweating and was short of breath. Dr. Henry Nguyen, a contract physician who was placed into the hospital on weekends by the Gould Group, attended to Campbell, diagnosing him with "unstable angina, rule out myocardial infarction." After reading what he believed to be an unremarkable EKG taken at 8:32 p.m., Nguyen admitted him to the ICU for observation at approximately 9:00 p.m after the administration of nitrates alleviated his chest pains. Contemporaneous nurses' notes upon his admission to the ICU noted that Campbell's skin remained cold and clammy and that his skin color was ashen. Nguyen, who was an ear-nose-and throat resident when not working as a contract ER doctor, did not consult with a cardiologist or call his attending physician. Nguyen then advised Campbell's wife and daughter that they could return home, stating that he had angina, was being kept overnight for observation, and that transfer to a full hospital in Monroe was unnecessary. Shortly thereafter, at 10:05 p.m., Campbell went into cardiac arrest and was resuscitated. A second EKG was then taken which indicated damage to Campbell's heart. Campbell was transferred to St. Francis Medical Center in Monroe the next day, where a subsequent examination by cardiologist Dr. Emile Barrow determined that Campbell suffered an acute anteroseptal infarction complicated by cardiac *806 arrest with mild congestive heart failure. Campbell also suffered brain damage due to oxygen deprivation during his cardiac arrest. After several weeks' hospitalization, Campbell was transferred to a nursing home because he was unable to care for himself or walk without assistance, and was unaware of his surroundings. He died on March 19, 1996, having never returned home after his trip to Citizen's Medical Center.
In the resulting complaint submitted to the medical review panel, Campbell's survivors alleged that the care rendered by Nguyen was substandard and negligent and that the hospital breached its duty to provide a competent staff, including Nguyen. The medical review panel unanimously ruled that the hospital and Nguyen met the applicable standard of care; the plaintiffs then filed the instant suit in the district court. After a hearing, summary judgment was granted in favor of the medical center, but no reasons for judgment were given by the court. The court designated its judgment as a partial final judgment and this appeal followed.

Applicable Law
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. The party seeking summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Barnett v. Staats, 25,357 (La. App.2d Cir.1/19/94), 631 So.2d 84.
Recent amendments to art. 966 were intended to bring Louisiana summary judgment procedure more closely into line with the Federal standard and abrogate judicial antipathy toward the motion. Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41. These enacted changes have leveled the playing field for the litigants; documentation submitted by the parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, at 231, and citations therein; Gardner v. LSU-MC, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. In fact, summary judgment procedure is now favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966 A(2).
Appellate review of summary judgments is de novo, utilizing the same criteria that guide the trial court. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, writ denied, 99-0877 (La.5/7/99), 740 So.2d 1290.
A hospital is responsible for the negligence of its employees under the doctrine of respondeat superior. Gibson v. Bossier City Gen. Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991). Under this theory, the standard of care and burden of proof involved is the same as for the physician whose activities are questioned. Corley v. State, Dept. of Health & Hospitals, 32,613 (La.App.2d Cir.12/30/99), 749 So.2d 926, 930; McCraw v. Louisiana State University Medical Center, 627 So.2d 767 (La. App. 2d Cir.1993), writ denied, 94-0001 (La.3/11/94), 634 So.2d 399; Bolton v. Louisiana State University Medical Center, 601 So.2d 677, 681 (La.App. 2d Cir.1992). To prevail in a medical malpractice action against a physician, the plaintiff must establish that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical speciality, and also that a causal relationship existed between *807 the alleged negligent treatment and the injury sustained. La. R.S. 9:2794; Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272 (La.1991); Smith v. State, Through DHHR, 523 So.2d 815 (La.1988); Warren v. Everist, 30,187 (La.App.2d Cir.01/21/98), 706 So.2d 593, writ denied, 98-0477 (La.04/03/98), 717 So.2d 1132. When a patient dies, to prove causation, the plaintiff need only prove that the defendant's malpractice resulted in the loss of a chance of survival, and is not faced with the unreasonable burden of demonstrating that the patient would have survived if properly treated. Martin, supra; Smith, supra; Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986).

Discussion-Citizen's Vicarious Liability for Nguyen's Actions
On appeal, the plaintiffs initially contend that summary judgment was improperly granted to Citizen's because the hospital was liable for the actions of Dr. Nguyen under the theory of respondeat superior. In response, Citizen's points to its contractual relationship with the Gould Group, claiming that no employment relationship existed between it and Nguyen, but rather that the doctor was an independent contractor selected and sent by Gould.
Generally, employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed. La.C.C. art. 2320. In contrast, a principal generally is not liable for the negligence of an independent contractor while performing his contractual duties. Ledent v. Guaranty National Ins. Co., 31,346 (La.App.2d Cir. 12/28/98), 723 So.2d 531; Thomas v. Albertsons, Inc., 28,950 (La.App.2d Cir.12/11/96), 685 So.2d 1134, writ denied, 97-0391 (La.3/27/97), 692 So.2d 395. Two exceptions to this general rule exist: (1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor. Thomas, supra.
Of primary concern is whether the principal retained the right to control the work. The important question is whether, from the nature of the relationship, the right to do so exists, not whether supervision and control was actually exercised. Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972); Roberts v. State, Through La. Health, etc., 404 So.2d 1221 (La.1981); Smith v. Crown Zellerbach, 486 So.2d 798 (La.App. 3d Cir.), writ denied, 489 So.2d 246 (1986). The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis. Ledent, supra; Fontenot v. J.K. Richard Trucking, 97-220 (La.App. 3 Cir. 6/4/97); 696 So.2d 176, 180.
The existence of an independent contractor agreement is not necessarily dispositive of the issue of whether a doctor is an independent contractor, as opposed to an employee of a hospital, and courts will inquire as to the real nature of the relationship and the degree of control exercised or ability of control by the hospital over the doctor's activities. Prater v. Porter, 98-1481 (La.App. 3d Cir.1999), 737 So.2d 102; Suhor v. Medina, 421 So.2d 271 (La.App. 4th Cir.1982). Whether an emergency room physician is an employee or an independent contractor is a factual issue turning on the control exercised by the hospital over his activities. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986); Suhor, supra. In fact, "[a] hospital's duty and corresponding liability for breach of that duty is in direct proportion to its right to control the medical treatment rendered there." Sibley v. Board of Supervisors of Louisiana State University, 490 So.2d 307, 314 (La.App. 1st Cir. 1986). In the present case, to establish independent contractor status, Citizen's presented a "Hospital Emergency Care Agreement" between it and the Gould Group, a physician staffing service, which expressly stated that the physicians which Gould was to provide would:

*808 Comply with the standards of professional practice and accept the duties as shall be determined by the medical staff of the Hospital and shall abide by the by-laws, the rules, and regulations set forth by the medical staff.
The agreement further specified that:
[t]he medical services to be performed by the physicians will be specified by the Hospital but shall be performed by the physicians as independent contractors under and subject to the general supervision of the Hospital, its medical staff, and in compliance with the rules and regulations of the Hospital. Gould is not engaged in the practice of medicine and does not and will not exercise control of any nature, kind, or description and will not exercise control of any nature, kind, or description relating to the mode, manner, or means by which the physicians shall perform their duties in providing emergency department coverage herein.
As part of the agreement, in addition to providing the services of nurses and other non-physician assistants to assist the physicians, the hospital agreed to "[p]rovide all necessary medical equipment, drugs, supplies, furniture, and fixtures at its own expense for the use of physicians so that they might carry out their services ..." Additionally, Gould assigned to the hospital the right to "bill and collect fees for all services furnished by the physician."
Although Citizen's is correct in noting that Nguyen was not directly compensated by the hospital for his services, but through Gould, based on this agreement, the hospital did retain the right to specify and control his activities. He was also apparently bound by the rules promulgated by the hospital which controlled the activities of the emergency room physician. At deposition, Nguyen testified that although he did not work exclusively at Citizen's, he had worked there in the past, and worked predetermined, set shifts during the weekends, and was paid a set fee for that work. He also did not pay any expenses. In response, Citizen's has presented an agreement to which Nguyen is not even a party and is certainly not dis-positive as to Nguyen's employment status. On this evidence, we find Nguyen's working relationship with Citizen's remarkably similar to that in Suhor, where the Fourth Circuit, in concluding that an employee relationship existed notwithstanding an "independent contractor" agreement, noted:
We conclude the facts in this particular case are overwhelming and leave no doubt that Mercy Hospital controls the working time and physical activities of [the physician]. The employment contract relied upon by the hospital spotlights the extremely close relationship between the parties. This physician has offered his personal services for a stipulated sum and is voluntarily subject to supervision and various administrative controls.... The hospital's and physician's self-serving designation of "independent contractor" is a transparent shield designed solely to circumvent the law. The totality of these facts mandates that Dr. Robinson be categorized as an employee of Mercy Hospital which is answerable for any damages which occur in the exercise of his functions. (Emphasis added)
Suhor, supra, at 274; see also, Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 721 (La.1986).
Similarly, the Third Circuit likewise disregarded an "independent contractor" agreement based on the right of the hospital to control the physician's activities. Prater, supra (staffing service receives summary judgment because hospital deemed employer), see also, Marchetta v. CPC of Louisiana, Inc., 99-0485 (La.App. 4th Cir.3/22/00), 759 So.2d 151. In light of this jurisprudence, and based on the summary judgment evidence before us, we conclude that the plaintiffs have demonstrated that a genuine issue of material fact exists as to whether Citizen's controlled, or had the right to control the *809 time, manner and method in which Dr. Nguyen rendered his services. Based on this summary judgment evidence, Citizen's is not entitled to summary judgment based on Nguyen's employment status which remains uncertain.

Independent Liability
A hospital also has a direct obligation and duty of care to its patients which is independent of any obligation or duty owed by the treating physician. A hospital must exercise the requisite amount of care toward a patient that his or her particular condition may require. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974); Brown v. E.A. Conway Memorial Hosp., 588 So.2d 1295 (La.App. 2d Cir.1991); Narcise v. Jo Ellen Smith Hosp., 98-0918 (La.App.4th Cir.3/10/99), 729 So.2d 748, 754; Bossier v. DeSoto Gen. Hospital, 442 So.2d 485, 490 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1122 (La.1984). As plaintiffs suggest, that duty would presumably include hiring competent physicians. On the summary judgment evidence before us, however, we cannot conclude that Citizen's has demonstrated that it has discharged that duty, for it appears that Citizen's relied on the Gould Group to screen and hire its emergency room contract physicians, and Citizen's did nothing to verify or supplement that process in order to ensure that its emergency room patients received appropriate care or even present evidence that it satisfied itself that Gould performed the hiring process in a competent manner. Thus, a genuine issue of material fact remains in this regard, thereby precluding summary judgment.
In addition, the absence of specific orders by the treating physician is not fatal to a plaintiff's personal injury claim alleging hospital negligence because the patient is entitled to rely upon the hospital's expertise and independent professional judgment to supplement the treating physician's direct orders when necessary to afford the patient the safe and reasonable health care the hospital is obligated to provide. Likewise, strict adherence to the physician's orders cannot excuse the failure to provide safe and reasonable care to the patient or preclude a finding of negligence on the part of the hospital. Brown, supra; Bossier, supra.
In the present case, Nurse Cherry Lowery testified that shortly before his cardiac arrest, Campbell's skin color was ashen and his skin was cold and clammy. Nevertheless, despite this important diagnostic indicator of an impending cardiac event, no nurse or staff member took steps to alert Nguyen or his attending physician, or otherwise take steps to implement a transfer to a full service hospital. In fact, the nurses' depositions indicate that they discussed Campbell's condition and felt that he needed to be transferred, but they did not covey this view to Nguyen or anyone with the authority to question Nguyen's orders. From the summary judgment evidence before us, however, we are unable to ascertain the reasonableness of the nurses' actions and whether they breached the applicable standard of care-as such, a genuine issue of material fact exists in this regard.
Additionally, as to liability, Citizen's is not entitled to summary judgment because several other issues remain unresolved. Campbell sought treatment from, contracted with, and was billed by Citizen's Medical Center for the emergency services required that day. Citizen's held itself out as an emergency services provider without qualification; as such, Campbell was entitled to reasonably infer that he was to receive competent emergency room services. In fact, as far as emergency room services are concerned, Nguyen's employment status may be irrelevant if Nguyen was simply fulfilling Citizen's duty to provide competent emergency room services. See also 40A AM JUR 2d Hospitals and Asylums, § 47 Nonliability for actions of independent contractor physicians, note 17 and citations therein; 40A AM JUR 2d Hospitals and Asylums, § 48 Liability for *810 emergency-room malpractice, and citations therein.
We find this situation-the providing of emergency services-distinguishable from that of a surgeon or other doctor holding hospital privileges contracting with a patient, where the physician is typically held to be an independent contractor. This is because the patient is seeking treatment through a hospital emergency room with no choice as to treating physician. In fact, other states have long questioned the propriety of permitting hospitals to shield themselves from liability by labeling their emergency room physicians as "independent contractors," imposing liability upon hospitals despite independent contractor relationships erected to shield them from liability. This is because an apparent, or ostensible agency[1] is created by a hospital "holding itself out" as a full service facility and creating the image that its physicians are employees of the hospital, and not independent contractors. See e.g., Jackson v. Power, 743 P.2d 1376, 1380 (Alaska 1987); Capan v. Divine Providence Hosp., 287 Pa.Super. 364, 430 A.2d 647, 649 (1980)(asserting that "[i]t would be absurd to require ... a patient to be familiar with the law of respondeat superior and so to inquire of each person who treated him whether he is an employee of the hospital or an independent contractor."); Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121, 1124 (1977)(patient's reliance on the hospital for care and no indication that the physician was not an employee were significant factors in rejecting the hospital's claim of immunity); Grewe v. Mt. Clemens Hosp., 404 Mich. 240, 273 N.W.2d 429 (1978)(patient's expectations and that no notice was given of the hospital-physician relationship were significant factors in rejecting immunity); Adamski v. Tacoma Gen. Hosp., 20 Wash.App. 98, 579 P.2d 970, 979 (1978)(rejecting independent contractor immunity where the hospital does not disavow patient's reasonable belief he is being treated by the hospital or one of its employees); Weldon v. Seminole Mun. Hosp., 709 P.2d 1058 (Okla.1985).
In fact, following this reasoning, even a doctor who is a true independent contractor is nonetheless "an agent of the hospital with respect to the patient." Capan, supra at 649. This is certainly reasonable, as an emergency room patient seeks acute care not from a particular physician, but the hospital itself; it would therefore be patently unfair to bind the patient to the ramifications of a contract that is neither public knowledge or applicable to all emergency room situations between a physician staffing service and the hospital. See, e.g., Mduba v. Benedictine Hosp., 52 A.D.2d 450, 384 N.Y.S.2d 527, 529 (1976); Hardy v. Brantley, 471 So.2d 358, 372 (Miss.1985)(unjust to permit hospitals to contract away liability for negligence of its emergency room physicians where agreement is beyond the knowledge or perception of the patient).
In the present case, the summary judgment evidence before us is insufficient to educe Campbell's reasonable expectation upon entering the hospital, as well as any measures Citizen's took to provide notice that Nguyen was in fact not their employee or a member of the hospital staff. Notably, the "Authorization for Emergency Treatment" signed upon Campbell's admission to Citizen's was an agreement between Campbell and the hospital, and Nguyen is never mentioned. In fact, the agreement expressly states that "the treatment and procedures will be performed by physicians, members of the house staff and employees of the hospital." *811 As such, this agreement, in addition to the hospital bill, which billed for Nguyen's services (in a line item entitled "E.R. Physician"), does nothing to dispel any reasonable belief that Nguyen was indeed a hospital employee or otherwise indistinguishable from the other members of Citizen's staff. As these issues remain unresolved, summary judgment is not appropriate at this time.

Standard of Care
Citizen's further suggests that summary judgment was proper because the plaintiffs have failed to establish the standard of care for the hospital itself, i.e., they presented no expert deposition testimony contradicting the medical review panel's finding that the hospital was not negligent. Since we have already determined that genuine factual issues as to the hospital's independent liability remain unresolved, we will address that standard of care only briefly. As already discussed, Citizen's had an independent duty to render safe and reasonable care to Campbell, and Campbell was entitled to rely upon the hospital's expertise and independent professional judgment to assess Nguyen's capabilities to handle emergency room duties, and if necessary, to supplement Nguyen's direct orders when necessary to afford Campbell the requisite care. Therefore, we believe that on this record sufficient evidence exists to create a genuine issue of material fact to defeat summary judgment.
Additionally, in a malpractice action against a hospital under the theory of respondeat superior the standard of care and burden of proof involved is the same as for the physician whose activities are questioned. McCraw, supra; Bolton, supra. The record contains sufficient evidence of the standard of care applicable to Dr. Nguyen.
It is well established that where medical disciplines overlap, a specialist in one field may give expert testimony as to the standard of care applicable to areas of the practice of medicine common to both disciplines. Corley v. State, Department of Health & Hospitals, 32,613 (La.App.2d Cir. 12/30/99), 749 So.2d 926, 931, see also, Leyva v. Iberia Gen. Hosp., 94-0795 (La.10/17/94), 643 So.2d 1236; Richardson v. State, 98-918 (La.App. 3d Cir.12/09/98), 726 So.2d 417. Although the plaintiffs did not offer deposition testimony from an expert in emergency medicine, the record clearly shows that the diagnosis and treatment of angina leading to a MI is not peculiar to the practice of emergency room medicine and that plaintiffs' expert witnesses (both cardiologists) in this case were more than qualified to establish the standard applicable to Nguyen's care of Campbell that day.
Dr. David Tepper, an expert cardiologist specializing in cardiovascular disease, opined that applicable clinical guidelines at the time mandated that a patient such as Campbell should have received aspirin and anticoagulant therapy immediately upon admission, and that the 8:32 p.m. EKG showed a subtle abnormality, which, although perhaps not as discernable to a non-cardiology resident than as to a practicing cardiologist, coupled with Campbell's clinical presentation and worsening condition, should have alerted Nguyen that a MI was imminent and a treatment protocol other than observation was warranted. Dr. Barrow, the cardiologist who consulted with Nguyen after Campbell's MI and who attended Campbell after he was transferred to the hospital in Monroe, offered a similar opinion.
Simply put, the depositions of Drs. Tepper and Barrow contradict the opinion of the medical review panel as to the standard of care and breach. Citizen's sole reliance on the medical review panel's findings that Nguyen and Citizen's did not breach their applicable standards of care-to the exclusion of any other expert testimony, is misplaced. The medical review panel is a pre-trial screening procedure designed to give both parties a preliminary view of the merits of the case. Everett v. *812 Goldman, 359 So.2d 1256, 1264 (La.1978); Rowsey v. Jones, 26,823 (La.App.2d Cir.5/10/95), 655 So.2d 560, 576. As an informal, yet instructive body, its findings are not to have a preemptive or dispositive effect on subsequent litigation as Citizen's suggests. Everett, supra at 1267. Further, it is uncertain as to the medical specialties of the panel members. Although the panel's findings are admissible at trial and to be given the requisite weight by the trier-of-fact at trial, given the disputed quality of expert opinions in this case, the panel's findings does not conclusively show that no genuine issue of material fact exists for the purpose of summary judgment.

Conclusion
For the reasons expressed above, the judgment of the district court is REVERSED and this case REMANDED for further proceedings consistent with this opinion. Costs are assessed to Citizen's.
REVERSED AND REMANDED.
KOSTELKA, J., concurs with written reasons.
KOSTELKA, J., concurring.
While a question of fact may yet survive with regard to the hospital's vicarious or independent liability, I believe the majority paints with too broad a brush in holding that the hospital controls the physician's activities and thus may be liable as his employer. To quote further from a case cited and quoted briefly by the majority: "[N]o court of this state has ever held a hospital liable for failure to supervise medical treatment. A hospital's control of the medical treatment received by its patients is indirect and somewhat limited." Sibley v. Board of Supervisor's of Louisiana State University, 490 So.2d 307, 314 (La.App. 1st Cir.1986), writ denied, 496 So.2d 325 (La.1986). The majority relies heavily on Prater v. Porter, 98-1481 (La.App. 3d Cir. 1999), 737 So.2d 102 and Suhor v. Medina, 421 So.2d 271 (La.App. 4th Cir.1982), both of which are distinguishable on their facts. For instance, in Suhor the emergency room physician worked exclusively for the hospital in question and had administrative duties over hospital personnel.

APPLICATION FOR REHEARING
NORRIS, C.J., and STEWART, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing denied.
KOSTELKA, J., would grant rehearing.
NOTES
[1] The Second Restatement of Torts, explains that theory as:

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in rendering such services, to the same extent as though the employer were supplying them himself or by his servants.
RESTATEMENT (SECOND) OF TORTS § 429.