842 So.2d 1175 (2003)
The ESTATE OF Guy Wilson WILBURN, et al., Plaintiff-Appellant,
v.
Dr. Ben LEGGIO and Desoto Regional Health System, Defendant-Appellee.
No. 36,534-CA.
Court of Appeal of Louisiana, Second Circuit.
March 19, 2003.
Writ Denied June 6, 2003.
*1176 Georgia P. Kosmitis, Shreveport, for Appellant.
Mark A. Goodwin, Shreveport, for Appellee, Dr. Ben Leggio.
Rene' J. Pfefferle, Baton Rouge, for Appellee, DeSoto General Health System.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, J.
In this medical malpractice action, the plaintiffs, Estate of Guy Wilson Wilburn, the legal representative of the decedent's husband and the decedent's major children,[1] appeal a summary judgment in favor of the defendant, Desoto Regional Health System d/b/a DeSoto General Hospital ("DeSoto General"), dismissing the plaintiffs' claims. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
In June 1991, the decedent, Lela Wilburn ("Wilburn"), was admitted to the Heritage Manor Nursing Home, in Mansfield, Louisiana. In September 1992, Dr. Ben Leggio began treating Wilburn, as her primary care physician. Dr. Leggio provided medical care and treatment for Wilburn in the nursing home, in his office and at DeSoto General.
In their petition, plaintiffs allege that on numerous occasions, between September 1992 and November 1995, Wilburn was admitted to DeSoto General suffering from improper care and attention, coupled with signs of drug addiction. Specifically, plaintiffs allege that Dr. Leggio inappropriately treated Wilburn's medical condition, which was diagnosed as "phantom leg pain." They allege that Dr. Leggio failed to obtain a consultation or inquire into any *1177 alternate treatment plans for Wilburn. Instead, he improperly ordered and administered narcotic medications to her. According to the plaintiffs, as a result of Dr. Leggio's treatment, Wilburn suffered an increased reliance on opioids, benzodiazepines and phenothiazines. Plaintiffs allege that Dr. Leggio failed to monitor the medications and plan of treatment provided by the nursing home for the care of Wilburn. Additionally, the plaintiffs allege that agents of DeSoto General provided "over the phone" care to Wilburn by authorizing medications without a physician's order.
On several occasions, Wilburn was taken to the emergency room of DeSoto General and was found to be in extreme crisis and near a diabetic coma. She had knots or calcifications on her buttocks which resulted from the numerous injections of excessive medications she was receiving at the nursing home. She was also found to be suffering from an addiction to prescription medications, which required that she be hospitalized in the detoxification unit.
On November 17, 1995, Wilburn was transferred to the DeSoto General emergency room where she was administered the drug Toradol. According to the plaintiffs, this drug was clearly contraindicated in Wilburn's case. Dr. Leggio was working in the emergency room at the time of Wilburn's arrival and ordered the Toradol. She was transported to Willis-Knighton Medical Center, in a semi-comatose state, suffering from severe pneumonia, dehydration, malnutrition, a urinary tract infection, renal insufficiency and septicemia. Wilburn later died from her condition.
On July 1, 1996, the plaintiffs filed a medical malpractice claim against defendants, Dr. Leggio and DeSoto General, pursuant to the Louisiana Medical Malpractice Act. LSA-R.S. 40:1299, et seq. The claim was presented to a medical review panel, which rendered the opinion that DeSoto General did not breach the standard of care in this case. However, the plaintiffs filed suit for the personal injury and wrongful death of Wilburn alleging: (1) the hospital's agents, including Dr. Leggio, caused injury to Wilburn by inducing a drug addiction and authorizing the administration of medication without a physician's order; (2) the hospital breached its duty to hire competent physicians and ensure patient safety and patient rights; and (3) the hospital, through its contracts, relationships, employment arrangements and employees, provided substandard care and perpetuated the substandard care that was provided by Dr. Leggio.
Dr. Leggio and DeSoto General filed motions for summary judgment asserting that there was a complete absence of expert testimony to support the plaintiffs' contention that DeSoto General had breached the standard of care in connection with the treatment of the decedent. After a hearing, the trial court denied Dr. Leggio's motion for summary judgment. However, the court granted DeSoto General's motion and dismissed all claims against the hospital. The trial court found that there were no material issues of fact with regard to the vicarious liability of DeSoto General, but all proceedings with regard to Dr. Leggio would continue. The plaintiffs appeal the summary judgment in favor of DeSoto General.

DISCUSSION
On appeal, the plaintiffs contend the trial court erred in granting summary judgment in favor of DeSoto General because genuine issues of material fact exist as to its liability. The plaintiffs argue that the trier of fact should determine the following issues: (1) Whether Dr. Leggio was an "employee agent" of DeSoto General or *1178 an "independent contractor," and (2) Whether DeSoto General breached its duty to provide "quality care and competent physicians to Wilburn, and as a result, is liable for any negligent acts of Dr. Leggio."
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Stroder v. Horowitz, 34,048 (La.App.2d Cir.12/20/00), 775 So.2d 1175. The party seeking summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Barnett v. Staats, 25,357 (La.App.2d Cir.1/19/94), 631 So.2d 84. Recent amendments to LSA-C.C.P. art. 966 were intended to bring Louisiana summary judgment procedure more closely in line with the federal standard. These enacted changes have leveled the playing field for the litigants. Documentation submitted by the parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. In fact, summary judgment procedure is now favored to secure the just, speedy, and inexpensive determination of all except certain disallowed actions. LSA-C.C.P. art. 966 A(2); Campbell v. Hospital Service District No. 1, Caldwell Parish, 33,874 (La. App.2d Cir.10/4/00), 768 So.2d 803, writ denied, XXXX-XXXX (La.1/12/01), 781 So.2d 558. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2). The duty of the appellate court is to conduct a de novo review of the documentation supporting and opposing summary judgment under the same criteria which govern the trial court's determination of whether summary judgment is appropriate. Stroder v. Horowitz, supra.
A hospital is responsible for the negligence of its employees under the doctrine of respondeat superior. Under this theory, the standard of care and burden of proof involved is the same as for the physician whose activities are questioned. Campbell v. Hospital Service District No. 1, Caldwell Parish, supra.
To prevail in a medical malpractice action against a physician, the plaintiff must establish that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical speciality, and also that a causal relationship existed between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Stroder v. Horowitz, supra; Campbell v. Hospital Service District No. 1, Caldwell Parish, supra. Subsequently, when a patient dies and the aforementioned causal relationship exists, the plaintiff need only prove that the defendant's malpractice resulted in the loss of a chance of survival, and is not faced with the unreasonable burden of demonstrating that the patient would have survived if properly treated. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La. 1986).
Expert testimony is necessary to prove that the health care provider failed to possess the required skill and knowledge *1179 or failed to exercise reasonable care and diligence. Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La. 1991). However, that necessity for expert evidence is abolished as to the standard of care required by the hospital or doctor where a reasonable juror can conclude that negligence has occurred. Hastings, supra.
In the present case, DeSoto General moved for summary judgment asserting that it did not exercise control over Dr. Leggio's activities or decisions in the emergency room and that it was not responsible for any negligence, if found, of the doctor. In support of its motion, DeSoto General submitted the report issued by the medical review panel. In opposition to the motion, the plaintiffs filed the affidavit of Dr. Lige Borroughs Rushing, a physician board certified in internal medicine, rhuematology, and geriatrics.
Dr. Rushing opined that Dr. Leggio breached the standard of care with regard to Wilburn's treatment by:
1. Failing to explore additional and/or alternative treatment for her phantom limb pain;
2. Failing to seek consultation;
3. Failing to adequately evaluate Wilburn's depression; and
4. Failing to adequately treat Wilburn's depression.
Although Dr. Rushing's opinion criticizes the acts or omissions of Dr. Leggio, and not the hospital, DeSoto General can be held liable for the negligent acts of Dr. Leggio through the law of vicarious liability once a plaintiff has established the employment relationship between the two.
The medical review panel is a pre-trial screening procedure designed to give both parties a preliminary view of the merits of the case. Everett v. Goldman, 359 So.2d 1256, 1264 (La.1978); Rowsey v. Jones, 26,823 (La.App.2d Cir.5/10/95), 655 So.2d 560, 576. Contrary to DeSoto General's arguments, the medical review panel's findings are not to have a preemptive or dispositive effect on subsequent litigation. Everett, supra at 1267.
DeSoto General argues that the trial court was correct in granting the motion for summary judgment. It examines both Powell v. Fuentes, 34,666 (La.App.2d Cir.5/9/01), 786 So.2d 277and Campbell v. Hospital Service District No. 1, Caldwell Parish, supra, and argues that those cases clearly involve emergency room physicians who were providing services at the respective hospitals pursuant to emergency-room physician contracts, and the emergency-room physician contracts and other documents were offered into evidence to create material issues of fact. Although DeSoto General disagrees with the result reached in those cases, it contends that a distinction from the present case can be readily made because Dr. Leggio was the regular and preferred physician of the deceased. DeSoto General further contends it is not responsible for the actions of Dr. Leggio and it did not breach the standard of care required. DeSoto General argues that it had no control over Dr. Leggio's decisions and its main function was to provide the facilities as directed by the physicians. Campbell v. Hospital Service District No. 1, Caldwell Parish, supra; Tabor v. Doctors Memorial Hospital, 563 So.2d 233 (La.1990).
The legal issues in this case are very similar to the legal issues presented in Powell v. Fuentes, supra. There, as in the case sub judice, the medical review panel found that the standard of care required by the hospital/defendant had not been breached. On appeal in Powell, this court noted that "the distinction between employee and independent contractor status is a factual determination that must be decided on a case-by-case basis, taking into *1180 consideration the total economic relationship between the parties and the various factors weighing out in favor of or against an employer-employee relationship." We also noted that the "most important element to be considered is the right of control and supervision over an individual." We explained that the power to control is the deciding factor within the relationship, not whether supervision and control was actually exercised. We further held that even the existence of an independent-contractor agreement is not necessarily dispositive of the issue of whether a doctor is an independent contractor as opposed to an employee of the hospital.
A similar situation was also presented to this court in Campbell v. Hospital Service District No. 1, Caldwell Parish, supra. There, the plaintiff argued that a hospital was liable for the actions of the emergency room physician under the theory of respondeat superior. The hospital responded that the emergency room doctor was an independent contractor, employed by a company that contracted to supply emergency room physicians to the hospital.
We note, and plaintiffs emphasize in their brief, that the physician in the Campbell case was a member of Gould Group, the same physician staffing service of which Dr. Leggio was a member. Dr. Leggio states in his deposition that he was not working in the hospital's emergency room pursuant to his contract with Gould Group. However, as stated above, this court found, in Campbell, that the existence or non-existence of a emergency care contract is not necessarily dispositive of the issue of whether the doctor is an independent contractor, as opposed to an employee of the hospital.
In both Campbell and Powell, this court found that summary judgment was not appropriate. We explained that it is unreasonable to expect persons entering the hospital to know whether the physicians treating them are "independent," and not agents and/or employees of the hospital.
In the instant case, Dr. Leggio admitted in his deposition that when he was working in the emergency room at DeSoto General Hospital, there were no notices, or other communications to inform the patient that he was not an employee of the hospital. DeSoto General's contention that notice was apparent and unnecessary to the deceased because she was a long term patient of Dr. Leggio, and therefore, knowledgeable of his employment status, is illogical and unreasonable. Clearly, most individuals who make regular visits to their family physician do not inquire as to their doctor's employment contracts with a particular hospital or medical center. The knowledge of the patient has nothing to do with the hospital's control over the physician. It is within the duty of the hospital to ensure that they hire only competent physicians and to verify that they are able to render care in a competent manner. This duty extends to all employees whether they are independent contractors, full-time, part-time or temporary workers. Campbell v. Hospital Service District No. 1, Caldwell Parish, supra.
We find that a genuine issue of material fact exists as to whether DeSoto General controlled, or had the right to control, the manner in which Dr. Leggio rendered his services. We also note that plaintiffs have alleged independent acts of negligence on the part of DeSoto General which clearly create genuine issues of material fact. Therefore, we conclude that summary judgment in favor of DeSoto General was improperly granted.

CONCLUSION
For the reasons expressed above, the judgment of the trial court is reversed and *1181 this case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to DeSoto Regional Health System d/b/a DeSoto General Hospital.
REVERSED AND REMANDED.
NOTES
[1] In the petition, the plaintiffs are individually listed as follows: The Estate of Guy Wilburn, Herman Pete Sepeda, Jewell Phillips, Ruby Remedies, Wilbert Maxey, Joann Warren, Johnny Remedies, Billy Sepeda, Jack Sepeda, Edward Sepeda, Carolyn Stockton, Danny Wilburn and Peggy Mobley.