858 So.2d 99 (2003)
In re MEDICAL REVIEW PANEL PROCEEDINGS FOR THE CLAIM OF Allan TINOCO Individually, and on behalf of his Wife, Martha Tinoco and their two minor Children Diana Tinoco and Monica Tinoco
v.
MEADOWCREST HOSPITAL and Stephen Garcia.
Allan Tinoco and Martha Tinoco, Individually and on behalf of their two minor Children, Diana Tinoco and Monica Tinoco
v.
Maxim Healthcare Services, Inc., and Stephen Garcia.
In re Medical Review Panel Proceedings for the Claim of Allan Tinoco Individually, and on Behalf of his Wife, Martha Tinoco and their two minor Children, Diana Tinoco and Monica Tinoco
v.
Meadowcrest Hospital and Stephen Garcia.
Nos. 2003-CA-0272, 2003-CA-0273, 2003-CA-0274.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2003.
*101 Eileen McCarthy Brown, New Orleans, LA, and Oscar L. Shoenfelt, III, Oscar L. Shoenfelt, III, L.L.C., Baton Rouge, LA, for Plaintiff/Appellees Allan Tinoco, et al.
Arthur H. Leith, Deborah A. Van Meter and Margaret Diamond, McGlinchey Stafford, PLLC, and Robert E. Kerrigan, Jr., Philip D. Lorio, III, Deutsch, Kerrigan And Stiles, L.L.P., New Orleans, LA, for Appellants Maxim Healthcare, Inc., and Ace American Insurance Company.
Gregg L. Spyridon, Cynthia C. Branch and Elaine W. Selle, Spyridon Koch & Palermo, L.L.C., Metairie, LA, for Appellants Stephen Garcia and American Casualty Company of Reading, PA.
Larry M. Roedel, David A. Woolridge, Jr., Roedel, Parsons, Koch, Blanche, Balhoff & McCollister, Baton Rouge, LA, for Intervenor, The Louisiana Patient's Compensation Fund Oversight Board.
Peter E. Sperling, Ann Marie Leblanc, Frilot, Partridge, Kohnke and Clements, L.C., New Orleans, LA, for Amicus Curiae, Tenet Health System Hospitals, Inc., d/b/a Meadowcrest.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO JR., Judge.
This case involves the denial of exceptions of prematurity and venue by the trial court in a medical malpractice action. For the reasons set forth below, we remand this case to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Allan Tinoco, was injured when he fell from a ladder. He was admitted to Charity Hospital of Louisiana ("Charity") and diagnosed with a partial dislocation involving the spine, which was treated by an open reduction internal fixation ("ORIF") procedure. When Mr. Tinoco was discharged from the hospital the next day, he was ambulatory and wearing a C-spine collar.
The day after he was released from Charity, Mr. Tinoco sought treatment at Meadowcrest Hospital ("Meadowcrest") for a cough. At Meadowcrest, he was diagnosed with bilateral pneumonia and admitted to the hospital. Mr. Tinoco wore a C-spine collar to Meadowcrest and advised the physicians and staff there that he had been discharged from Charity after undergoing an ORIF for a spinal subluxation. Shortly after he was admitted to Meadowcrest, he was examined by a neurosurgeon, who found, after reviewing Mr. Tinoco's x-rays, that the ORIF was stable.
On December 25, 2000, five days after he was admitted to Meadowcrest for the treatment of pneumonia, Mr. Tinoco was taken out of the bed and placed in a chair pursuant to his doctor's orders. After he ate lunch while he was sitting in the chair, Mr. Tinoco asked to be returned to his bed.
Stephen Garcia, a registered nurse, attempted to return Mr. Tinoco to his bed, but Mr. Tinoco alleges that he was accidentally dropped onto the floor by Nurse Garcia during the transfer from the chair to the bed. Nurse Garcia requested assistance from other nurses, and with their help, they eventually returned Mr. Tinoco to his bed.
After the alleged incident, Mr. Tinoco immediately began to experience severe *102 weakness in his upper and lower extremities that progressed to numbness and quadriplegia. The next day surgery was performed. After the surgery, Mr. Tinoco's spinal cord was held in place by plates, wires, and metal screws in certain of his vertebrae. The surgery resulted in only slight neurological improvements. When Mr. Tinoco was released from Meadowcrest more than a month after his admission, he was a quadriplegic, who was confined to a wheelchair and unable to speak.
Although Mr. Tinoco has regained his ability to speak and some mobility in his extremities, he can only walk for short periods of time with a cane, and the use of his hands is severely limited. Also, he has additional medical problems, including bladder, bowel, and sexual dysfunction, pain, and numbness.
Mr. Tinoco and his wife, both individually and on behalf of their minor children, filed a complaint with the Louisiana Patients' Compensation Fund (the "PCF"). They sought to convene a medical review panel under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 et seq. (the "MMA"), to review the claims of malpractice arising from the injury to Mr. Tinoco that occurred when he was allegedly dropped onto the floor by Nurse Garcia. Although the Tinocos filed a complaint with the PCF against both Meadowcrest and Nurse Garcia, they were notified by the PCF that Nurse Garcia was not covered by the MMA and was, therefore, not entitled to the benefits afforded by the MMA, including the right to have the claim against him considered by a medical review panel.
The Tinocos subsequently learned that Nurse Garcia was working at Meadowcrest at the time of Mr. Tinoco's hospitalization pursuant to an agreement between the Metropolitan Hospital Council of New Orleans (the "Metropolitan Hospital Council") and Maxim Healthcare Services ("Maxim"), an agency that supplies temporary nurses to hospitals that are members of the council. The Tinocos then filed a medical malpractice lawsuit in Civil District Court for the Parish of Orleans against Nurse Garcia, Maxim, and their respective malpractice insurers. Meadowcrest was not named as a defendant in the lawsuit, because Meadowcrest is covered under the MMA, and, therefore, the medical review panel was first required to consider the claims against the hospital.
There are three consolidated lawsuits that have been filed in connection with the incident at Meadowcrest. The first lawsuit was filed by Meadowcrest in the district court, and it requested that the district court allow Meadowcrest to use the court process as a means to conduct discovery in connection with the proceedings before the medical review panel, as permitted by the MMA. La. R.S. 40:1299.47. The second lawsuit is the one filed by the Tinocos. The third lawsuit is an action by Meadowcrest requesting a declaratory judgment that Nurse Garcia was not an employee of Meadowcrest when the incident involving Mr. Tinoco occurred. All three lawsuits have been consolidated, and the records in all three lawsuits have been lodged in this Court on appeal.
Nurse Garcia filed a dilatory exception of prematurity in the malpractice action brought by the Tinocos. The exception asserted that he was an employee of Meadowcrest and that as such he was entitled to be a party to the proceedings before the medical review panel. Therefore, he argued that no lawsuit against him in connection with the malpractice claim could be properly brought until the medical review panel had completed its proceedings. He asked the district court to dismiss the suit against him, because it was premature. Nurse Garcia's insurer, American Casualty *103 Company of Reading, PA ("American Casualty") also filed a dilatory exception of prematurity.
Maxim and its insurer, Ace American Insurance Company ("Ace"), filed declinatory exceptions of improper venue in the malpractice suit. American Casualty filed a similar exception.
In the declaratory judgment action brought by Meadowcrest, Meadowcrest filed a motion for partial summary judgment. Meadowcrest sought a declaratory judgment as to the employment status of Nurse Garcia with respect to the hospital.
A hearing was held on the dilatory exceptions of prematurity, the declinatory exceptions of improper venue, and the motion for partial summary judgment. The trial court denied all of the exceptions as well as the motion for partial summary judgment.
Meadowcrest applied to this Court for supervisory writs to review the denial of its motion for partial summary judgment. This Court, however, declined to grant the writ application. In re: Medical Review Panel Proceedings for Claim of Allan Tinoco, 2002-2751, unpub., (La.App.2/3/03). Nurse Garcia, American Casualty, Maxim, and Ace are now appealing the trial court's denial of the exceptions of prematurity and the exceptions of venue.

STANDARD OF REVIEW
We must determine whether the Tinocos were required to convene a medical review panel to review their claim against Nurse Garcia prior to filing their medical malpractice suit against him. This is a question of law as well as of fact. Therefore, we must conduct a de novo review of this case to determine whether the trial court's ruling on the dilatory exception of prematurity was legally correct. See, e.g., Cleco Evangeline, LLC v. Louisiana Tax Commission, 2001-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353, where the Louisiana Supreme Court stated with respect to an issue of law being reviewed on appeal that "[w]e review the matter de novo, and render judgment on the record, without deference to the legal conclusions of the tribunals below." The issue regarding the declinatory exception of venue is also a question of law, so that issue must also be reviewed de novo by this Court. Crawford v. Blue Cross and Blue Shield of La., 2000-2026, p. 3 (La.App. 4 Cir. 12/5/01), 814 So.2d 574, 577; Nitro Gaming, Inc. v. D.I. Foods, Inc., 34,301, p. 4 (La.App. 2 Cir. 11/1/00), 779 So.2d 817, 820.

DISCUSSION
Before we can determine whether or not the exceptions of prematurity and venue were properly denied by the trial court, we must determine whether the Tinocos were required to convene a medical review panel to review their claims against Nurse Garcia. To do this, we must determine whether he was employed only by Maxim or by both Meadowcrest and Maxim at the time of the alleged incident involving Mr. Tinoco.
Qualification under the Louisiana Medical Malpractice Act
The MMA limits the malpractice liability of health care providers who qualify under the MMA by filing proof of financial responsibility as required by the MMA and by paying a surcharge to the PCF. As long as a health care provider remains qualified under the MMA, the malpractice liability of the provider and the provider's insurer is limited to the extent provided by the MMA. Additionally, the MMA provides that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been *104 presented to a medical review panel established pursuant to this Section." La. R.S. 40:1299.47(B)(1)(a)(i).
A "health care provider" is defined by the MMA to mean, in relevant part, a person licensed by the state to provide health care, and the definition expressly includes a registered nurse. La. R.S. 40:1299.41(A)(1). It is clear that Nurse Garcia, who is a registered nurse, is a health care provider under the MMA. What is not clear is whether he was "qualified" under the MMA such that he is within the scope of the protective provisions of the MMA.
La. R.S. 40:1299.42(A) provides, in relevant part, as follows:
To be qualified under the provisions of this Part, a health care provider shall
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
Although the Tinocos initially sought to convene a medical review panel to consider the malpractice claims against both Nurse Garcia and Meadowcrest, the PCF notified them that Nurse Garcia was not qualified for coverage under the MMA. Nurse Garcia had not qualified individually for coverage under the MMA. Additionally, Meadowcrest had advised the PCF that Nurse Garcia was not an employee of Meadowcrest and was, therefore, not qualified under the MMA by virtue of the coverage Meadowcrest maintains for its employees who are health care providers.
Meadowcrest qualified its health care provider employees under the MMA by evidencing the financial responsibility and by paying the surcharges required by the MMA for qualification. The health care provider employees are qualified as a group, not individually, and the names of Meadowcrest's qualified employees are not submitted to the PCF. When a person seeks to convene a medical review panel because of medical malpractice that was allegedly committed by a Meadowcrest employee, the PCF requests certification by Meadowcrest of the employment status of the health care provider involved. If Meadowcrest certifies that the health care provider is an employee qualified under the MMA by Meadowcrest, the employee is entitled to coverage under the MMA. Otherwise, if the provider has not otherwise qualified under the MMA, the provider is not entitled to the MMA's benefits.
In the case of Nurse Garcia, Meadowcrest advised the PCF that Nurse Garcia was not an employee of Meadowcrest when Mr. Tinoco was allegedly injured. Nurse Garcia, however, claims that he was an employee of Meadowcrest when Mr. Tinoco was hospitalized and should, therefore, be a qualified health care provider entitled to the benefits of the MMA.
Based on the PCF's determination that Nurse Garcia was not qualified under the MMA as an employee of Meadowcrest, the Tinocos did not convene a medical review panel prior to filing their malpractice suit against Nurse Garcia and Maxim. Nurse Garcia and American Casualty filed a dilatory exception of prematurity under La.C.C.P. art. 926, which is the proper procedural mechanism for a qualified health care provider under the MMA to invoke when a medical review panel should have been convened but was not. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119.
Nurse Garcia's Employment Status
It is uncontested that at the time of the incident allegedly causing injury to Mr.
*105 Tinoco, Nurse Garcia was employed by Maxim, a health care employment agency engaged in the business of providing registered nurses to hospitals for temporary assignments. It is also uncontested that when the alleged incident occurred, Nurse Garcia was working at Meadowcrest on a temporary assignment as the nurse in charge of Mr.Tinoco's care. What is contested is Nurse Garcia's employment status with respect to Meadowcrest.
In Marchetta ex rel. Marchetta v. CPC of Louisiana, Inc., 99-0485 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, a medical malpractice case, this Court stated that "[t]he `single most important factor' for determining whether an employer-employee relationship exists is `the right of the employer to control the work of the employee.'" 99-0485, p. 6, 759 So.2d at 155 (citing Roberts v. State of Louisiana, 404 So.2d 1221, 1225 (La.1981)). Therefore, we must determine whether Meadowcrest had the right to control Nurse Garcia's work.
The Tinocos argue that Nurse Garcia was not an employee of Meadowcrest based on a number of factors. They argue that because Nurse Garcia was on Maxim's payroll, maintained his own medical malpractice insurance, and did not consider himself a Meadowcrest employee, Nurse Garcia was not an employee of Meadowcrest. Additionally, the contract between Maxim and the Metropolitan Hospital Council, pursuant to which Maxim provided Nurse Garcia's services to Meadowcrest, expressly stated that nothing in the contract should be construed to create an "employer/employee" relationship. The Tinocos also argue that Nurse Garcia wore a uniform that differed from the uniform worn by the nurses who were permanently employed by Meadowcrest and displayed a badge identifying him as a Maxim employee. Finally, Nurse Garcia was required to furnish his own stethoscope, pencils, pens, and scissors.
Nurse Garcia, however, argues that he was a Meadowcrest employee. He bases his argument on the fact that he was performing nursing duties caring for a Meadowcrest patient at Meadowcrest when the alleged injury to Mr. Tinoco occurred. Further, Meadowcrest scheduled the times he worked, provided most of the instruments and tools he needed to perform nursing duties, and, based on the hours submitted on timesheets approved by his supervising nurse at Meadowcrest, provided the funds to pay Nurse Garcia.[1]
Courts in this state have considered the employment status of health care providers whose services are used by hospitals. In Campbell v. Hospital Service District No.1, Caldwell Parish, 33,874 (La. App. 2 Cir. 10/4/00), 768 So.2d 803, the Court of Appeal of Louisiana, Second Circuit, stated as follows:
Of primary concern is whether the principal retained the right to control the work. The important question is whether, from the nature of the relationship, the right to do so exists, not whether supervision and control was [sic] actually exercised. The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis.
33,874, p. 4-5, 768 So.2d at 807 (citations omitted).
The Campbell case was a medical malpractice case involving an emergency room physician provided to the hospital through *106 a physician staffing service. The Second Circuit considered whether the physician was a hospital employee or an independent contractor. The Court stated that "[w]hether an emergency room physician is an employee or an independent contractor is a factual issue turning on the control exercised by the hospital over his activities." 33,874, p. 5, 768 So.2d at 807.
The Second Circuit found that the existence of an independent contractor agreement was not necessarily dispositive of the issue of whether an emergency room doctor is or is not a hospital employee. In the Campbell case there was a contract between the hospital and a physician staffing service that expressly stated that the emergency room physicians that the service provided would accept the duties as determined by the medical staff of the hospital and abide by the rules and regulations of the hospital's medical staff. The contract further stated that the emergency room physicians would perform medical services as independent contractors under the general supervision of the hospital and its medical staff. Additionally, the physician staffing service assigned to the hospital the right to bill and collect the fees for the services provided by the emergency room physicians furnished pursuant to the staffing contract. Based on the facts in the Campbell case, the Court reversed a summary judgment in favor of the hospital and remanded the case for a trial on the merits, including the issue of the emergency room physician's employment status.
In Powell v. Fuentes, 34,666 (La.App. 2 Cir. 5/9/01), 786 So.2d 277, the Second Circuit reiterated that "the existence of an independent contractor agreement is not necessarily dispositive of the issue of whether a doctor is an independent contractor, as opposed to an employee of a hospital, and courts will inquire into the real nature of the relationship and the degree of control exercised ... by the hospital over the doctor's activities." 34,666, p. 9, 786 So.2d at 283. In the Powell case the Court reversed a summary judgment in favor of the hospital in a malpractice case, because the Court found that there was a genuine issue of material fact regarding the amount of control the hospital had over the emergency room doctor who allegedly committed medical malpractice.
The Court of Appeal of Louisiana, Third Circuit, has also considered the issue of whether an emergency room physician is an employee of the hospital where the physician provides medical services. In Arrington v. Galen-Med, Inc., 2002-987 (La.App. 3 Cir. 2/5/03), 838 So.2d 895, the Third Circuit adopted the position of the Second Circuit in the Powell case that the existence of a contract stating that an emergency room physician is an independent contractor is not dispositive with respect to the employment status of an emergency room physician. Quoting the Powell case, the Third Circuit in the Arrington case stated as follows:
We find this situationthe providing of emergency servicesdistinguishable from that of a surgeon or other doctor holding hospital privileges contracting with a patient, where the physician is typically held to be an independent contractor. This is because the patient is seeking treatment through a hospital emergency room with no choice as to treating physician. In fact, other states have long questioned the propriety of permitting hospitals to shield themselves from liability by labeling their emergency room physicians as "independent contractors," imposing liability upon hospitals despite independent contractor relationships erected to shield them from liability. This is because an *107 apparent, or ostensible agency is created by a hospital "holding itself out" as a full service facility and creating the image that its physicians are employees of the hospital and not independent contractors....
2002-987, p. 7, 838 So.2d at 899. The Third Circuit in Arrington held that the emergency room physician was an employee of the hospital.
This Court has also considered the status of an emergency room physician as a hospital employee. Suhor v. Medina, 421 So.2d 271 (La.App. 4th Cir.1982) was a medical malpractice case in which recovery was sought against a hospital due to the negligence of an emergency room physician. There was a written contract stating that the physician was an independent contractor. The contract further stated that the hospital did not have control over the physician. This Court considered the fact that social security was not withheld from the physician's salary and the fact that he was required to maintain his own malpractice insurance, but found neither factor persuasive in determining whether he was an independent contractor or an employee of the hospital where he worked.
This Court stated in Suhor that "[t]he hospital's and physician's self-serving designation of `independent contractor' is a transparent shield designed solely to circumvent the law." 421 So.2d at 274. This Court concluded that "[t]he totality of these facts mandates that Dr. Robinson be categorized as an employee of Mercy Hospital which is answerable for any damages which occur in the exercise of his functions." Id. Cf., Badeaux v. East Jefferson General Hospital, 364 So.2d 1348 (La.App. 4th Cir. 1978), where this Court held in a medical malpractice case that an affidavit stating that a hospital did not supervise an emergency room physician and a contract stating that the physician was an independent contractor were sufficient to support summary judgment in favor of the hospital where there were no countervailing affidavits filed.
Finally, the Louisiana Supreme Court has considered the status of emergency room physicians. In Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986), the Supreme Court held that the trial court erred in directing a verdict in favor of the hospital in a medical malpractice case involving a surgeon and an emergency room physician. With respect to the emergency room physician, the Supreme Court cited the Suhor case for the proposition that whether an emergency room physician is an employee or an independent contractor is a factual issue turning on the control exercised by the hospital over the physician's activities. Cf., Tabor v. Doctors Memorial Hospital, 563 So.2d 233 (La.1990), where the Supreme Court found, based on the record in that case, that an emergency room physician was not an employee of the hospital where he worked; instead, the Supreme Court found that he was an employee of an emergency physicians group.
Although we have found no cases involving the employment status of nurses who work at hospitals under agency contracts, we find that the cases involving the employment status of emergency room physicians are instructive in the instant case. If emergency room physicians can be deemed to be employees of a hospital despite contracts providing that they are independent contractors, then nurses working under contract with a hospital can clearly be deemed to be employees, because nurses have less autonomy than physicians. A nurse is not an independent practitioner and is always supervised in a hospital. An agency nurse working in a hospital works under the supervision of a charge nurse, and the agency nurse must follow a physician's *108 orders as well as comply with the hospital's rules and policies. This Court has articulated the responsibility a hospital has for the actions of its nurses by stating that "[a] hospital is responsible for the negligence of its nurses under the respondeat superior doctrine." In re Arthemise Triss, XXXX-XXXX, p. 13 (La.App. 4 Cir. 6/5/02), 820 So.2d 1204, 1212. The hospital is presumed to have control over the actions of its nurses, whether they are agency nurses or regular hospital employees.
Based on the rationale of the Suhor case, we do not find the fact that Maxim, instead of Meadowcrest, paid Nurse Garcia and the payroll taxes owed on his salary to be determinative of whether he was an employee of Meadowcrest. Also, based on the Suhor case, we do not find the fact that Nurse Garcia maintained his own malpractice insurance to be dispositive of his employment status. Similarly, based on the rationale of the Campbell, Powell, and Arrington cases, we do not find the contract between Maxim and the Metropolitan Hospital Council, providing that nurses supplied to hospitals were not deemed to be in an "employer/employee" relationship with the hospitals where they worked, to be dispositive of Nurse Garcia's employment status.
In the instant case, Nurse Garcia worked on the premises at Meadowcrest, cared for the hospital's patients, and reported to the charge nurse who serves in a supervisory capacity with respect to all nurses, both temporary nurses and permanent employees. Although Meadowcrest could not terminate Nurse Garcia's employment by "firing" him, Meadowcrest could certainly relieve him from his nursing duties at the hospital and prohibit him from returning to work there. Also, the supervision of Nurse Garcia at Meadowcrest was the same as for the hospital's permanent nurses.
From the standpoint of the hospital patient, there is every expectation that the nursing staff is supervised and controlled by the hospital. The wearing of an identification badge with an agency name or a different style of uniform from the permanent nursing staff by an agency nurse is of no moment to a seriously ill patient in need of nursing care. The patient assumes that all nurses in the hospital are employees of the hospital selected for their competence in nursing care. Unlike physicians with staff privileges at hospitals, the nurses do not send patients individual bills, do not determine the treatment the patients receive, and do not have offices outside of the hospital from which the patients can receive medical treatment. The patient has a choice in choosing a physician[2],but there is no choice in choosing the nurse who takes care of the patient in a hospital. The patient cannot terminate the nurse's services, but the patient can terminate a physician's services.
Based on the facts in the instant case, we find that Nurse Garcia was working under the supervision and control of Meadowcrest at the time of the incident involving the alleged injury to Mr. Tinoco. Therefore, Nurse Garcia was an employee of Meadowcrest at that time.
Dual Employers
In Morgan v. ABC Manufacturer, 97-0956 (La.5/1/98), 710 So.2d 1077, the Louisiana Supreme Court considered whether an employer in the business of hiring out temporary employees to other businesses is liable for the tortious conduct of its employees that occurs while they are working at their temporary jobs. The Supreme *109 Court determined that the general employer, who hired out temporary workers to work for others, and the special employer, who supervised the temporary employees it hired, were both liable for the torts of the employees. The general employer and the special employer were dual employers.
We find that a dual employer situation existed in the instant case. Therefore, Nurse Garcia was employed by both Maxim and Meadowcrest at the time of the incident involving Mr. Tinoco, and both Maxim and Meadowcrest are responsible for any malpractice committed by Nurse Garcia while he was working at Meadowcrest as an agency nurse.
Exception of Prematurity
Although we have determined that Nurse Garcia was an employee of both Meadowcrest and Maxim, there is insufficient evidence in the record for us to determine whether or not the exception of prematurity was properly denied. There is nothing in the record that definitively shows that Meadowcrest paid the surcharge necessary to qualify Nurse Garcia under the MMA. There is, however, an affidavit by Cheryl Jackson, the malpractice insurance director for the PCF, which states that if there is a judicial determination that Nurse Garcia was an employee of Meadowcrest or an employee of both Meadowcrest and Maxim when the alleged injury to Mr. Tinoco occurred, the PCF will issue a certificate of enrollment stating that Nurse Garcia is qualified with the PCF pursuant to the MMA. This would entitle him to have the Tinocos' claim against him heard by a medical review panel before a court considers the claim.
In Remet v. Martin, 97-0895 (La. App. 4 Cir. 12/10/97), 705 So.2d 1132, this Court stated with respect to the MMA that "[t]he statute does not automatically grant `qualified' health care provider status to all employees of qualified health care providers." 97-0895, p. 8-9, 705 So.2d at 1136. We, therefore, remand this case to the trial court for further proceedings on the exceptions of prematurity. The trial court is instructed to grant the exceptions of prematurity if sufficient evidence is introduced into the record showing that Nurse Garcia has been certified by the PCF as a qualified health care provider.
Exception of Venue
Because we have not reversed the trial court's dismissal of the exceptions of prematurity, venue in Orleans Parish is currently proper, since Nurse Garcia is a resident of Orleans Parish. Therefore, we will not rule on the dismissal of the exceptions of venue, because it is premature for us to do so.

CONCLUSION
Based on the foregoing discussion, this case is remanded to the trial court for further proceedings in accordance with this Court's opinion. If sufficient evidence is presented to the trial court to show that Nurse Garcia is a qualified health care provider under the MMA, who is entitled to a hearing before a medical review panel, the exceptions of prematurity should be granted.
REMANDED.
NOTES
[1] Meadowcrest paid Maxim a fee based on the number of hours Nurse Garcia worked. Maxim used a portion of these funds to pay Nurse Garcia for his services at Meadowcrest. Maxim also paid all payroll taxes for Nurse Garcia from the fee paid for Nurse Garcia's services.
[2] We note that this is not the case with an emergency room physician, whose position with a hospital is often similar to that of an agency nurse, as discussed above.